[No. 35029. Department Two. June 25, 1959.]

THE STATE OF WASHINGTON, on the Relation of Adams Transport, Inc. et al., Respondents and Cross-appellants, v. THE WASHINGTON PUBLIC SERVICE COMMISSION et al., Appellants.[1]

[1]Reported in 340 P. (2d) 784.

*The Attorney General* and *Stanton P. Sender, Assistant,* for appellant.

*James T. Johnson,* for appellants Brader and Inland Petroleum Transportation Co., Inc.

*Kellogg, Reaugh, Hart & Allison, George H. Hart, W. Quinn Marshall,* and *Reuben Youngquist,* for respondents and cross-appellants.

MALLERY, J.—This is an appeal from a judgment of the superior court reversing an order of the Washington Public Service Commission, hereafter referred to as the Commission, which transferred to the Inland Petroleum Transportation Co., Inc., hereafter referred to as Inland, that certain part of the appellant Brader's common carrier permit No. 1026 which relates to transportation of bulk cement. The respondents, competitors of Inland, contested the transfer of the permit.

The application for the transfer was filed September 16, 1957. Brader desired the transfer in order to realize thirteen thousand five hundred dollars from the sale of his bulk-cement trailer unit to Inland, the deal being contingent upon approval of the transfer in question. This sum would have eased Brader's financial difficulties and enabled him to *improve his equipment and service* under the remainder of his common carrier permit.

■ On September 23, 1957, Inland procured a temporary license and Brader did not thereafter engage in transporting bulk cement for the reason that he supposed he had no right to do so under the circumstances. This fact, of course, did not constitute an overt abandonment of his rights under his permit.

The trial court found that the permit was dormant and reversed the order of the Commission. Rule 21 (g), promulgated by the Washington Public Service Commission, requires a showing of *public need* in the case of an application for transfer of a *dormant* permit. No such showing is necessary for the transfer of a permit that is *not* dormant. There was no showing of public need. Thus, the correctness of the trial court's ruling in overturning the order of the Commission depends upon the single *factual* question of whether or not the permit was *dormant*.

We must resolve this question of fact in the light of the provisions of RCW 81.04.430, which reads:

"Whenever the commission has issued or promulgated any order or rule, in any writ of review brought by a public service company to determine the reasonableness of such order or rule, the findings of fact made by the commission shall be *prima facie correct*, and the burden shall be upon the public service company to *establish* the order or rule to be *unreasonable* or *unlawful*." (Italics ours.)

Rule 21 (g) *supra*, specifies: ". . . Generally, *a period of only one year immediately prior to the date of the application* will be considered, . . ." (Italics ours.)

In this period, from September 16, 1956, to September 16, 1957, the date of the application, Brader hauled 8,124,360 pounds of bulk cement, and received a gross revenue of $24,301.78, the last shipment prior to the application for transfer of the permit being August 29, 1957.

■ In the light of these facts, the finding by the Commission that Brader's permit was not dormant should have been accorded the statutory presumption of *prima facie* correctness. The trial court erred in holding to the contrary.

The next question concerns the trial court's ruling that the Commission was arbitrary and capricious in not taking

into account the effect that the competition of Inland would have upon the respondents' businesses as a result of the transfer.

The respondents contend that under the declaration of policy of the Motor Carrier Act, RCW 81.80.020, the Commission should have considered the effect of Inland's competition upon them. They argue that it would result in an increase in competition, which would necessarily have an adverse effect on their economic position. They do not point out how the transfer would have an adverse effect on the service available to the public. RCW 81.80.020, *supra*, in setting out the purpose of the act, lists, among other objectives:

". . . that the shippers of the state may be provided with a stabilized service and rate structure; . . . that adequate, economical, and efficient service by motor carriers, and reasonable charges therefor, without unjust discrimination, undue preferences or advantages, or *unfair* or *destructive competitive practices may be promoted*; . . ." (Italics ours.)

Respondents are mistaken in their contention that the purpose of the act is to protect them from competition, or that the competition must necessarily adversely affect the interest of the public. Such an interpretation of the act would render it unconstitutional because it would then offend Art. XII, § 22, of the Washington state constitution, which prohibits monopolies in general and transportation monopolies in particular. The words "unfair or destructive *competitive* practices" (Italics ours.) can constitutionally mean only such competitive practices as would impair the transportation service available to the public. The fact that competition might be injurious to the respondents is of no moment unless it would have that result. The respondents have not established that the competition of Inland would adversely affect the public interest. The Commission was not arbitrary or capricious in not holding to the contrary.

Finally, the respondents contend on their cross-appeal that the Motor Carrier Act does not authorize the transfer

of *part* of a common carrier permit. The act is silent upon this question. It neither specifically authorizes nor prohibits such a transfer.

■ The Washington Public Service Commission's administrative interpretation of the act sanctions transfer of a part of a permit. We find nothing illegal or impractical in this administrative interpretation of the act. In any event, we have not been persuaded to substitute our judicial wisdom for its administrative policy.

We hold that the trial court erred in not according the Washington Public Service Commission's finding of fact the presumptive correctness which the statute requires.

The judgment is reversed with directions to reinstate the Washington Public Service Commission's order granting the transfer in question.

WEAVER, C. J., HILL, FOSTER, and HUNTER, JJ., concur.

---

September 4, 1959. Petition for rehearing denied.