[Nos. 35257, 35258.   Department Two.   August 11, 1960.]

THE STATE OF WASHINGTON, *on the Relation of Railway Express Agency, Inc., Respondent*, v. WASHINGTON PUBLIC SERVICE COMMISSION *et al., Appellants*. POZZI BROTHERS TRANSPORTATION *et al., Respondents*, v. WASHINGTON PUBLIC SERVICE COMMISSION *et al., Appellants*.[1]

[1]Reported in 354 P. (2d) 711.

33

*The Attorney General* and *Stanton P. Sender, Assistant,* for appellant Washington Public Service Commission.

*Dore, Cummings, Dubuar & Dore, Fred H. Dore* (*Schnader, Harrison, Segal & Lewis, Bernard G. Segal,* and *Irving R. Segal,* of counsel), for appellant United Parcel Service, Inc.

*Summers, Bucey & Howard* and *G. H. Bucey,* for respondent Railway Express Agency.

*Smithmoore P. Myers,* for respondents.

FINLEY, J.—The validity of order M. V. No. 69970, issued by the Washington Public Service Commission on December 3, 1958, is questioned in this case. The order authorizes issuance of a permit to United Parcel for operation as a common carrier throughout most of western Washington and a portion of eastern Washington for the intercity carriage of packages or articles, not exceeding 50 pounds in weight or 108 inches in length and girth, combined. The order also approves United Parcel's proposed rates, including a $2 weekly service charge to be paid by all shippers desiring to have United Parcel's trucks make regular daily stops at the shippers' places of business; and it contains certain other provisions, hereinafter noted.

Issuance of the order was protested by several previously certificated common carriers, including the Railway Express Agency, Inc., Western Greyhound Lines, and some sixteen short-line motor freight carriers. In essence, the protestants charged rate discrimination, unfair competition, and unlawful common carriage. The order, as finally issued, was predicated upon findings of fact which were entered by the commission after hearings had been held for a total of fifteen days. During this period, some 116 exhibits were received into a record totaling 2,879 pages. Specifically, the commission determined (a) that the plan proposed by United Parcel will fulfill an existing public need; (b) that the rate schedule proposed, including the $2 weekly service charge, is "just, reasonable and compensatory and neither discriminatory nor prejudicial"; and (c) that granting of the authority requested by United Parcel will not tend to impair the dependability or stability of existing service essential to public needs, nor will it result in congestion of the highways.

At the behest of the protesting carriers, and pursuant to RCW 81.04.170, the commission's order was reviewed by the Thurston County Superior Court. The trial judge reversed the commission's order and entered findings of fact and conclusions of law in support of his ruling. United Parcel and the commission have appealed. These appellants will hereinafter be referred to by name, and the protesting

carriers, who prevailed in the trial court, will be referred to as the respondents.

The primary point upon which the commission and the trial court disagreed concerns the legal significance of the above-mentioned $2 weekly service charge. In order better to understand the position taken by the respondents, this facet of the plan of operation proposed by United Parcel should be set forth in some detail, particularly in relation to the shipper desiring to avail itself of the carrier's services.

Under the plan which United Parcel has proposed, that portion of the state in which the carrier seeks to operate will be divided into eight "sub" areas. An "operating center" will be maintained in each of these subareas, in the following cities: Seattle, Tacoma, Olympia, Kelso, Mt. Vernon, Cle Elum, Yakima and Pasco. A shipper who desires to make a delivery via United Parcel may take his packages to one of the operating centers and pay a delivery charge of nineteen cents per parcel, plus three, four, or five cents per pound, depending on the distance of the point of destination from the point of shipment. As an alternative, the shipper may pay the $2-per-week service charge in addition to the delivery fee, in return for which United Parcel will send one of its trucks to the shipper's place of business at the same time each day, five days a week, regardless of whether the shipper has any parcels ready for shipment on any particular day. As a practical matter, most shippers who engage the services of United Parcel will probably choose the second or alternate method because of the convenience implicit therein, particularly those shippers whose places of business are located some distance from the closest operating center.[2]

---

[2]As the respondent Railway Express Agency graphically points out in its brief, several of the more populous cities located within the area which United Parcel seeks to serve are located at substantial distances from the closest operating center. Bellingham, for example, having a 1957 population of approximately 36,600 persons, is located some 26 miles from the nearest operating center in Mt. Vernon. Vancouver, 1957 population around 42,000 persons, is 40 miles from nearest operating center in Kelso. Walla Walla, 1957 population approximately 43,800 persons, is 46 miles from the closest operation center in Pasco.

Respondents' first contention (as to which the trial judge acquiesced) is that, because any shipper desiring to utilize United Parcel's daily pick-up service must pay the $2 weekly service charge, irrespective of the number of parcels shipped during a particular week, this facet of the proposed plan is inherently violative of RCW 81.28.190:

"No common carrier shall give any undue preference or advantage to any person or locality or to any particular description of traffic, or subject any particular person or locality or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage."

With respect to this contention, the following finding of the commission (briefly noted above and set forth here verbatim) is pertinent:

"12. Applicant's proposed rates, including the $2.00 weekly service charge set out in Appendix B, are just, reasonable and compensatory and are neither discriminatory nor prejudicial. . . ."

By way of contrast, the trial court's finding on this issue, to which the appellants, United Parcel and the Commission, have duly assigned error, reads as follows:

"While said additional weekly pickup charge of $2.00 would not be unduly burdensome to shippers having a larger number of shipments per week such as the number per week shown by the testimony of the shipper witnesses of said respondent, United Parcel Service, Inc., for all the concerns such witnesses represented it would be unduly burdensome and economically prohibitive for other shippers having only an occasional shipment or only a few per week, and particularly for such shippers located in any of the cities or towns which are many miles from one of said receiving stations of said respondent, who are thus physically prevented from making delivery themselves of their shipments to said respondent for carriage; and it therefore constitutes an undue preference or advantage to those shippers who have a larger number of shipments per week and/or who are located at or near the location of one of said receiving stations, and an unreasonable prejudice or disadvantage to said other shippers, practically excluding them from the service of said respondent."

Thus the question squarely posed by the conflict between the findings of the commission and the trial judge

is whether a fixed fee, charged by a carrier for a regular periodic pickup stop at a shipper's place of business, is *unreasonably* discriminatory in favor of the large-volume shipper and against the small-volume shipper. Returning momentarily to the finding of the commission, *supra*, we are of the opinion that the key word contained therein is the word "compensatory." The reasonableness of a particular fee charged by a carrier must be viewed not only from the point of view of the shipper, but also from the point of view of the carrier. *Stone v. Farmers' Loan & Trust Co.* (1886), 116 U. S. 307, 331, 29 L. Ed. 636, 6 S. Ct. 334, emphasizes this principle in the following language:

" . . . This power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation. Under pretence of regulating fares and freights, the State cannot require . . . [a carrier] to carry persons or property without reward; neither can it do that which in law amounts to a taking of private property for public use without just compensation, or without due process of law."

    The relationship between the compensatory nature of a rate and the notion of reasonableness is well established in the area of public utility rate making. For example, in *City of Rochester v. Rochester Gas & Electric Corp.* (1922), 233 N. Y. 39, 134 N. E. 828, in an opinion written by Judge Cardozo, the New York court considered a rate schedule for manufactured gas which included not only a charge of $1.30 per thousand cubic feet of gas used but also a service charge against each consumer of 40 cents per month, to apply regardless of the amount of gas used. The service charge was attacked as "unjust and unreasonable or unjustly discriminatory, regardless of the amount thereof." However, the court pointed out that certain of the gas company's costs were constant, whereas others varied with the amount of gas used by a particular consumer. The company's expenses in connecting a building with a gas main and in maintaining the facility were characterized as constant costs, which "will be the same though only a trifling quantity of gas, or even none at all, is used by the householder requiring the connection." Therefore, in order to compensate the company

for such constant costs, and to equate the benefit of facilities with the burden of contributing to the cost of supplying or maintaining them, the uniform monthly service charge was upheld. The New York court further noted, in support of its conclusion, that service charges of this type have been sustained by the courts or public utility agencies of some thirty-eight states, and cited appropriate cases. For a compilation and discussion of a number of these cases see Annotation in 122 A. L. R. 193. We are convinced of the soundness of the logic underlying the principle announced in this line of cases.

In the instant case no contention has been made that the cost to United Parcel in providing a daily pickup service to those shippers who desire it will be other than constant. Nor is it urged that the $2 per week, the proposed charge for this service, is an unreasonable amount. The commission found the service charge to be compensatory, and the evidence amply sustains this finding. Therefore, by analogy to the above-noted public utility cases, this charge would appear to be lawful, unless for some reason the reasoning of the public utility cases is not applicable in the area of common carrier rate regulation.

In support of the position that the service charge is unlawful, the respondents rely on a line of decisions (involving common carriers) handed down by the Interstate Commerce Commission, illustrative of which is *Forwarder Rates Conditioned upon Aggregates of Tonnage* (1945), 264 I. C. C. 225, 228. In that case a carrier sought to charge a larger per-unit shipping rate to small volume shippers (as determined by the number of units shipped in a twelve-month period) than it charged to large volume carriers. The I. C. C. refused to approve this plan for the reason that "such rates are in the nature of a discount in favor of large shippers or consignees, and, hence, unlawful." The opinion contains the following significant statement:

"Respondent [carrier] concedes that there is no difference in the service he performs, nor in the operating costs he incurs, in handling traffic under the various rates published in his tariff. If, for example, each of five patrons simultane-

ously made a west-bound shipment of an equal amount of glassware and all the shipments were loaded by respondent in the same car, moved in the same direction, between the same points, and received from respondent the same service, each shipment might be charged a different rate, i.e., 160, 175, 185, 195, or 212 cents. The determination of the applicable rate would depend entirely upon the aggregate annual west-bound volume of traffic tendered or to be tendered by the respective patrons from all points of origin to all destinations during the whole 12-month period August 1-July 31."

In other words, the point emphasized was that the expense to the carrier in transporting each unit tendered for shipment in a particular carload was a constant cost, in no way related to the total number of units tendered by a particular shipper over the twelve-month period; and, therefore, the carrier was not entitled to relate its *per-unit* shipment charge to each shipper's overall annual volume of business.

The respondents urge that the principle thus announced by the I. C. C. is applicable as to United Parcel's proposed $2 weekly service charge in the instant case. They take the position that this service charge should be viewed as being a per-unit charge. From this position they argue that, for example, a company shipping only two packages in a particular week would be paying a charge of $1 per package for the pickup service, whereas another company shipping two hundred parcels during the same week would be paying only one cent per parcel for the pickup service. We cannot agree with this viewpoint. Unlike the freight rates condemned by the I. C. C. in the decisions relied upon by respondents, United Parcel's proposed $2 weekly service charge simply is not a per-unit charge for the transportation of goods. It is a fixed fee, to be paid by all shippers who desire the convenience of having a truck stop at their places of business, daily, to pick up whatever parcels are ready for shipment. Once United Parcel has taken possession of the parcels to be shipped, then a uniform per-unit rate will be charged for the transportation of the parcels from point of origin to point of destination. It may well be that use

of this daily pickup service will be relatively less advantageous, economically, for the small-volume shipper than for the shipper having a large volume of business. But the service charge is compensatory when viewed from the standpoint of United Parcel, whereas the infirmity in the freight rates rejected by the I. C. C. in the cases relied upon by respondents was that those rates were other than compensatory. We are convinced that United Parcel's proposed service charge is not unduly or unreasonably discriminatory, and, hence, is not violative of RCW 81.28.190.

In addition to their contentions relative to RCW 81.28.190, hereinbefore disposed of, the respondents succeeded in convincing the trial judge that,

"Because said respondent United Parcel Service, Inc. restricts its services to packages of the limited weight and size above mentioned [not to exceed 50 pounds in weight or 108 inches in length and girth combined], more convenient to handle, while petitioners [Railway Express Agency, Inc., and the sixteen short-line motor freight carriers] are, and for many years have been, furnishing a complete common carrier service, carrying commodities of all weights, sizes and kinds, including a large volume of shipments of the limited weight and size said respondent will carry, and because said respondent by giving the preference above mentioned [reference to the $2.00 weekly service charge] to shippers with a larger number of shipments per week thereby has an undue advantage in obtaining their large volume of shipments; said respondent's operation which said order [of the commission] purports to authorize constitutes *unfair competition* with said petitioners, which as lawful common carriers are required to serve all members of the public indifferently, or impartially; all of which is of substantial detriment or damage to said petitioners." (Italics ours.) Trial court's finding of fact No. 8.

While denominated a finding of fact, this statement of the trial court appears in essence to be a conclusion of law; namely, that the commission, by approving United Parcel's $2 weekly service charge, and by authorizing United Parcel to limit its carriage to relatively small parcels, has granted to this particular carrier an unfair competitive advantage.

Respondents, in urging that we uphold the trial court in

this respect, concede that they are not entitled to be free of all competition. However, they contend that they have a statutory right to be free from action of the commission granting an unfair advantage to a competitor, relying upon RCW 81.80.020 and RCW 81.80.220.

The first of these two statutes, RCW 81.80.020, simply contains a declaration of the underlying policy behind the Motor Carrier Act. In *State ex rel. Adams Transport v. Washington Public Service Comm.* (1959), 54 Wn. (2d) 382, 340 P. (2d) 784, we stated that the inhibition of the statute against "unfair or destructive competitive practices," applied only to

" . . . such competitive practices as would impair the transportation service available to the public. The fact that competition might be injurious to the respondents is of no moment unless it would have that result. . . ."

In the instant case the commission entered a specific finding on this point, as follows:

"15. Having in mind the authority hereinafter ordered, the commission feels that such authority will not tend to impair the dependability or stability of existing service essential to the public needs nor result in congestion of the highways."

The findings of the trial court are not in conflict with this particular finding, and our examination of the record compiled by the commission discloses that the commission's finding is clearly supported by substantial evidence. Accordingly, we conclude that United Parcel's proposed plan is in no way violative of the public policy pronouncement contained in RCW 81.80.020.

The second statute upon which respondents rely in support of their claim of unfair competition—namely, RCW 81.80.220—provides, insofar as is material, that

"The commission may refuse to accept any time schedule or tariff or contract that will, in the opinion of the commission, limit the service of a carrier to profitable trips only or to the carrying of high class commodities in competition with other carriers who give a complete service and thus afford one carrier an unfair advantage over a competitor."

We have some doubt as to whether the legislature, in enacting this statute, intended to create any rights running to competing carriers. The use of the permissive word *may* makes it appear that the statute was merely intended to vest the commission with authority to reject certain proposals, which, in the opinion of the commission, would afford an applicant an unfair advantage over a previously certified competing carrier. However, even assuming that the statute does create a right running to competing carriers who (like the respondents) offer a complete service, it is a somewhat limited right. The statute expressly specifies those things which will constitute an unfair competitive advantage. Thus, at most, respondents' right is a right to be free from competition by carriers authorized (a) to make profitable trips only, or (b) to carry only a high class of commodities.

■ It is clear that the $2 weekly service charge feature of United Parcel's proposed plan does not limit this carrier to profitable trips only, for United Parcel stands ready to make daily pickup stops at the place of business of any shipper located within this carrier's extensive area of operation who is willing to pay this charge, regardless of the number of parcels such shipper has ready for shipment on any given day. As to whether the provision relating to the size of the parcels to be carried by United Parcel limits this carrier to the transportation of high class commodities only, the formal opinion of the commission, explaining the basis for its order approving United Parcel's application, contains the following pertinent comment:

"As to the charge that applicant desires to 'skim the cream', this Commission need look no further than its own experience in regulation to conclude that small packages do not constitute the 'cream' of the transportation business within this state. If it be that such traffic is the 'cream', then curiously general freight carriers by motor vehicle have long settled for 'milk', when readily available were methods and techniques of specialization attractive to small package shippers."

The legislature has wisely vested the commission, composed of persons having substantial experience with prob-

lems of public transportation, with the primary authority to decide questions of this very type; *i.e.*, that which constitutes a high class commodity. Our examination of the record reveals that the observation above quoted is amply supported by the evidence.

A final point relating to the issue of unfair competition has been urged by counsel for the respondent short-line carriers. It is pointed out that, by a portion of the commission's order not previously noted in this opinion, the commission has granted United Parcel permission to require prepayment of all charges; to eliminate c. o. d. shipments; and to use a specially designed form of bill of lading. To this the commission responds that the need of the shipping public for the service to be rendered by United Parcel justifies this authorization. On this point, the commission entered the following finding:

"Applicant's proposals relating to C. O. D. collections, bills of lading and prepayment are integral elements of a necessary service, . . ."

We are satisfied that such is the case. We might also say at this point that, while the respondents have strenuously urged the unlawfulness or unfairness of United Parcel's proposed plan, they have at no time suggested that the commission was in error in finding that United Parcel's operation will fulfill an existing public need.

We hold that the plan of operation proposed by United Parcel, and approved by the commission, does not violate any statutory right which respondents may have to be free from action by the commission granting an unfair advantage to a competitor.

■ Lastly, there appears to be some suggestion in the trial judge's conclusions of law that United Parcel simply is not a common carrier and, thus, is not entitled to the permit granted by the commission. In *Cushing v. White* (1918), 101 Wash. 172, 172 Pac. 229, this court set forth a definition of the term "common carrier," which has often been cited. It is:

" . . . a common carrier is one whose occupation is the transportation of persons or things from place to place for

hire or reward, and who holds himself out to the world as ready and willing to serve the public indifferently *in the particular line or department in which he is engaged; . . ."* (Italics ours.)

Thus, the fact that United Parcel's services will be limited to the carriage of small parcels does not preclude it from being a common carrier. Its services will clearly be available to the shipping public at large. The fact that these services may in fact be used more often by large-volume shippers than by small-volume shippers is, we are convinced, of no consequence.

For the reasons stated in this opinion, the judgment of the trial court should be reversed, and the commission's order, M. V. No. 69970, reinstated. It is so ordered.

WEAVER, C. J., HILL, DONWORTH, and ROSELLINI, JJ., concur.