**BLACK BALL FREIGHT SERVICE**
et al., Plaintiffs,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants,

and

**Federal Transfer and Storage Company, D. W. Ramsey Motor Freight, Inc., Western Cartage, Inc., Evergreen Transfer and Storage Company, and Western Hauling, Inc., Intervening Defendants.**

Civ. A. No. 3314.

United States District Court
W. D. Washington, S. D.

April 6, 1967.

Eisenhower & Carlson and James F. Henriot, Tacoma, Wash., William B. Adams, Portland, Or., for plaintiffs.

Donald F. Turner, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., William N. Goodwin, U. S. Atty., Tacoma, Wash., for the United States.

Robert W. Ginnane, Gen. Counsel, and Manny H. Smith, Atty., I. C. C., Washington, D. C., for I. C. C.

Reaugh, Hart, Allison & Prescott, George H. Hart and Jack R. Davis, Seattle, Wash., for intervening defendants Federal Transfer, Ramsey Motor, Western Cartage and Evergreen Transfer.

George Kargianis, Seattle, Wash., for intervening defendant Western Hauling.

## OPINION

Before HAMLEY, Circuit Judge, and BOLDT and BEEKS, District Judges.

BOLDT, District Judge:

Plaintiff motor freight carriers operating in the State of Washington brought this action under Section 17(9) of the Interstate Commerce Act (Title 49 U.S.C.A. Section 17(9)), and pursuant to Title 28 U.S.C.A. Sections 1336, 1398, 2284 and 2321 through 2325, and Section 10 of the Administrative Procedure Act (Title 5, U.S.C.A. Sec. 1009), to set aside an order of the Interstate Commerce Commission (hereinafter "ICC").

By that order the ICC, over plaintiffs' protest, granted applications for the federal "grandfather" certificates of registration provided for by Public Law 87–805 (76 Stat. 911) to eleven

motor freight carriers previously operating under Washington State permits.

Plaintiffs' primary contention is that the ICC erred as a matter of law in holding permits issued from 1935 to 1963 by the Washington Public Service Commission [1] (hereinafter "WPSC") in substance and effect were "certificates of public convenience and necessity" within the meaning of that term as used in the second proviso of Section 206(a) (1) of the Interstate Commerce Act [2] and in the above-cited statute deleting the second proviso and authorizing the "grandfather" Certificates of Registration granted in the ICC decision from which this review is taken.[3] During argument all counsel agreed and we hold the stated contention presents a question of law, to be determined upon our examination of the pertinent Washington State statutes, regulations and Supreme Court decisions, and reversal is required if we conclude and hold contrary to the ICC ruling.[4]

Defendants do not question that consideration of "necessity," as well as "public convenience," is mandatory for the issuance of a certificate of public convenience and necessity within the meaning of the second proviso and the "grandfather" amendment. Undoubtedly during the 1935–1963 period the Washington statutes and decisions required the WPSC to consider and determine "public convenience." Whether or not in that period the WPSC, before granting a state permit, was *mandatorily* required to consider "necessity" in the particulars and to the extent required by federal law is the ultimate question for our determination.

The pertinent Washington legislative enactments are: Chapter 111, Laws 1921, Secs. 4, 5; Chapter 184, Laws 1935, Sec. 5; Chapter 166, Laws 1937, Sec. 6; Chapter 163, Laws 1941, Sec. 1; Chapter 264, Laws 1947, Sec. 2; Chapter 95, Laws 1953, Sec. 17; and Chapter 242, Laws

1. The Commission was renamed Department of Public Service, and later Utilities and Transportation Commission.

2. "* * * *  *And provided further*, That this paragraph shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this part."

3. Effective October 15, 1962 Section 206 (a) (6) (49 U.S.C. 306) was amended by Public Law 87–805, (76 Statutes 911) deleting the second proviso and providing to the extent pertinent to the present case, as follows:
"* * * * *no certificate of public convenience and necessity under this part shall be required for operations in interstate or foreign commerce by a common carrier by motor vehicle operating solely within a single State * * * * if such carrier has obtained from the commission of such State authorized to issue such certificates, a certificate of public convenience and necessity authorizing motor vehicle common carrier operations in intrastate commerce. * * * *"

4. Aero Mayflower Transit Co. v. Montana Board of Railroad Commissioners, 332 U.S. 495 at page 499, 68 S.Ct. 167 at page 169, 92 L.Ed. 99:
"We put aside at the start appellant's suggestion that the Supreme Court of Montana has misconstrued the state statutes and therefore that we should consider them, for purposes of our limited function, according to appellant's view of their literal import. The rule is too well settled to permit of question that this Court not only accepts but is bound by the construction given to state statutes by the state courts. * * * *"
Reconstruction Finance Corporation v. Breeding, 10 Cir., 211 F.2d 385 at page 390:
"* * * * That being the construction placed upon the statute by the highest court of the state, it is binding upon this court. Morehead v. People of State of New York ex rel. Tipaldo, 298 U.S. 587, 56 S.Ct. 918, 80 L.Ed. 1347; State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 * * * *"

1963, Sec. 1. A review of these statutory provisions discloses:

The 1921 statute brought motor transportation under supervision of a state Public Service Commission and expressly provided for "certificates of public convenience and necessity." Under the statute, consideration and findings by the Commission as to the essential elements for issuance of such certificates, i. e., both "public convenience" and "necessity," was mandatory.

The 1935 statute expressly abolished certificates of public convenience and necessity and authorized the issuance of permits with minimal limitations on the discretion of the Commission. Thereafter in 1937, 1941, 1947 and 1953 a series of amendments specified factors to be considered by the Commission in granting permits. These amendments provided limitations on the discretion to be exercised by the Commission. In adding some factors relating to "necessity" the legislature used the term "may," not "shall". Since each term is applied to different provisions in the same enactments, in such context it can hardly be questioned that the legislature intended "may" as permissive and "shall" as mandatory. State ex rel. Railway Express Agency, Inc. v. Washington Public Service Commission et al., 57 Wash.2d 32, 354 P.2d 711 (1960).

The 1963 statute re-established certificates of public convenience and necessity both in name and substance. Consideration by the Commission of both "convenience" and "necessity" expressly became mandatory. All previous conflicting statutes were repealed.

Prior to the 1941 amendment the ICC in Crumpacker Common Carrier Application, 4 M.C.C. 264; Pratt Common Carrier Application, 7 M.C.C. 448; Tooker Common Carrier Application, 12 M.C.C. 552; and Puget Sound Express, Extension, 14 M.C.C. 315 held Washington state permits were not registerable under the federal act. In *Puget Sound Express* the Commission said:

" * * * The State of Washington does not require certificates of public convenience and necessity as a condition precedent to the authorization of intrastate rights * * * "

The only significant amendment to the state statute after the cited decisions was that of 1941 which provided:

"The Department shall also consider the amount and type of service rendered in any area by any class of service and *may deny* an application for permit or extension if it appears that the grant of such permit or extension would tend to impair the stability or dependability of existing service essential to the public needs or requirements." (Emphasis added)

The ICC Act, 49 U.S.C. § 307, provides that in passing on applications for certificates of public convenience and necessity the Commission must find the proposed additional service

" * * * is or will be required by the present or future public convenience and necessity; otherwise such application *shall be* denied". (Emphasis added)

If the matter rested solely on the language of the Washington statutes as contrasted to the comparable provisions in the ICC Act, it would be difficult to escape the conclusion that from 1935 to 1963 permits might have been issued by the state Commission without mandatory consideration of all factors pertinent to "necessity" and, even though there was neither a showing nor finding of necessity, denial of a permit was not mandatory. The same conclusion follows from the statutory history which shows: abolition of "certificates of public convenience and necessity" in 1935, as previously were expressly required; the, at most, permissive language of statutory amendments pertaining to consideration of at least some phases of "necessity" from 1935 until 1963; in that year reenactment of provision for certificates of public convenience and necessity requiring mandatory consideration and finding of "necessity" as well as "public convenience."

The pertinent Washington Supreme Court decisions are: Taylor-Edwards

Warehouse & Transfer Co., Inc. v. Dept. of Public Service, 32 Wash.2d 580, 127 P.2d 309 (1949); State ex rel. Morrison v. Dept. of Transportation, 32 Wash.2d 580, 581, 202 P.2d 916 (1949); State ex rel. Petroleum Transport Co. v. WPSC, 35 Wash.2d 858, 216 P.2d 177 (1950); State ex rel. Adams Transport Inc. v. WPSC, 54 Wash.2d 382, 340 P.2d 784 (1959); State ex rel. Railway Express Agency v. WPSC, 57 Wash.2d 32, 354 P.2d 711 (1960); Herrett Trucking Co. v. WPSC, 61 Wash.2d 234, 377 P.2d 871 (1963); State ex rel. Bremerton Transfer & Storage Co. v. WUTC, 67 Wash.2d 876, 410 P.2d 602 (1966).

The cited decisions show: Contrary views can reasonably be derived from each of the opinions as to its bearing on the ultimate question before us. All of the parties rely on most of the same decisions as supporting their conflicting contentions, particularly *Adams* and *Herrett*. Nowhere in any of the opinions is it expressly held, or clearly indicated, that it was mandatory for the WPSC in granting a permit from 1935 to 1963 to give consideration .to all factors pertinent to "necessity," or to deny a permit for want of a showing and finding of "necessity." It was not specifically required, possibly not even permitted under the Washington Constitution,[5] that the WPSC consider the adverse effects upon the operator of existing facilities which might result from granting a permit. This is clearly shown in the last above-cited decision [6] wherein the state Supreme Court said:

" * * * Under the rule in State ex rel. Adams Transp., Inc. v. Washington Pub. Serv. Comm., 54 Wash.2d 382,

340 P.2d 784 (1959), the fact that competitors may be injured is not a relevant factor in determining whether a permit will be granted. (This case has been overruled by the 1963 amendment to RCW 81.80.070, but was in effect when this case was heard.)"

The pertinent WPSC regulations and the record of their application, as stated in the briefs, negative defendants' contention that in practice the Commission acted as though mandatorily bound to give consideration to all factors pertinent to "necessity" before issuing a permit. At a minimum, defendants' contention is not affirmatively shown by the regulations of WPSC and its application thereof.

■ Upon consideration of the cited Washington statutes, the WPSC regulations and their application, and the state Supreme Court interpretive decisions, taken in entirety, we are satisfied the WPSC was not mandatorily required to consider all factors pertinent to "necessity" and certainly not required to deny a permit when necessity was not shown and found by the Commission. If so, the WPSC was not authorized, or at least not required, to issue certificates of public convenience and necessity within the meaning of that term as used in the statutes providing for the issuance of federal "grandfather" certificates of registration. The ICC contrary holding and order based thereon were erroneous in law and are hereby reversed and set aside. This ruling makes it unnecessary to consider or determine any of the other contentions of plaintiffs.

It is so ordered.

---

5. See *Adams* at page 385 of 54 Wash.2d, at page 786 of 340 P.2d: "Respondents are mistaken in their contention that the purpose of the act is to protect them from competition, or that the competition must necessarily adversely affect the interest of the public. Such an interpretation of the act would render it unconstitutional because it would then offend Art. XII, § 22, of the Washington State Constitution, which prohibits monopolies in general and transportation monopolies in particular. * * * "

6. This case was decided January 27, 1966, considerably after the ICC ruling under review. However, the opinion was not cited to us by any party although the opinion was rendered long before the briefs were filed and a year before the argument in this case. Had *Bremerton Transfer* been available to the ICC, it might not have interpreted Washington law as it did.