[No. 48220-9. En Banc. July 8, 1982.]

RICHARD J. NIICHEL, ET AL, *Appellants,* v. LESTER J. LANCASTER, ET AL, *Respondents.*

*Richard J. Niichel,* pro se.

*Grant S. Meiner, Prosecuting Attorney,* for respondents.

ROSELLINI, J.—The appellants petitioned for a declaratory judgment and restraining order, directed against the County Assessor, claiming that the raising of assessments on their property was invalid because the assessor had failed to perform his duties within the time prescribed by

law, and because the Board of Equalization had sat at a time later than that provided by statute.

RCW 84.40.040 provides that the assessor shall complete the duties of listing and placing valuations on all property by May 31 of each year. In 1980, the Clallam County Assessor's action was not completed until mid–August. RCW 84.40.045 provides that the assessor shall give notice of any change in the true and fair value of real property no later than 30 days after appraisal. The 1980 notices were given as late as 35 days after the appraisal. RCW 84.40.320 provides that the assessor shall file his assessment book with the county board of equalization on the first Monday of July. In this instance, the book was filed on August 26, 1980. RCW 84.48.010 provides that the county board of equalization shall meet on the first Monday in July, and may continue in session for a period not to exceed 4 weeks. A proviso declares that any county board may be reconvened for special or general purposes, "but not later than three years after the date of adjournment of its regularly convened session by order of the department of revenue". Here, the Clallam County Board of Equalization was unable to undertake the appeal process at its regular July meeting for the reason that the tax rolls had not been spread. However, the Department of Revenue reconvened the board twice, through November 1980, "for the sole purpose of completing the equalization process". Clerk's Papers, at 20.

The appellants own a number of properties in Clallam County. On August 15, 1980, they received notice of assessed value changes for taxes payable in 1981. The notice advised that appeals to the Board of Equalization would be accepted within 30 days of its date. No appeal was taken, and the amount of the assessment has not been challenged. Instead, the appellants rest on the contention that the assessor was without authority to raise the assessment because the steps in the assessment process were delayed.

The assessor's excuse for these delays was that he had

not the necessary staff to complete the work within the time prescribed by statute.

Summary judgment was granted the defendant.

The appellants' case is grounded on the assumption that the word "shall", as used in the tax assessment statute, is mandatory rather than directory.

In *State v. Miller,* 32 Wn.2d 149, 201 P.2d 136 (1948), this court had before it a statute which provided:

> If any [auditor's] examination discloses malfeasance . . . in office on the part of any public officer or employee, within thirty days from the receipt of such copy of said report, it shall be the duty of the attorney general and he is hereby authorized to institute and prosecute without delay in the proper county such legal action as is proper . . ."

*Miller,* at 151–52. Holding that the statute was directory rather than mandatory, this court quoted the following from 3 J. Sutherland, *Statutory Construction* § 5816, at 102 (3d ed. 1943):

> "A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of the officer."

*Miller,* at 155.

The current edition of Sutherland reveals that this principle continues to prevail. In 1A C. Sands, *Statutory Construction* § 25.03, at 298–99 (4th ed. 1972), it is said:

> The important distinction between directory and mandatory statutes is that the violation of the former is attended with no consequences, while the failure to comply with the requirements of the latter either invalidates purported transactions or subjects the noncomplier to affirmative legal liabilities.
>
> This distinction grows out of the fundamental difference in the intention of the legislature in enacting the two statutes. Although directory provisions are not intended by the legislature to be disregarded, yet the seriousness of noncompliance is not considered so great

that liability automatically attaches for failure to comply. . . . [I]f the statute is merely a guide for the conduct of business and for orderly procedure rather than a limitation of power, it will be construed as directory only.

(Footnotes omitted.)

And in section 25.04, the writer states:

The directory character of a statute may likewise be indicated by the purpose of a statute and the manner in which its purpose is expressed. Thus it was said: "Where words are affirmative, and relate to the manner in which the power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may and often have been construed as directory; . . ." Likewise, where the time, or manner of performing the action directed by the statute is not essential to the purpose of the statute, provisions in regard to time or method are generally interpreted as directory only.

(Footnotes omitted.) These principles apply here. The statutes under consideration serve the purpose of prescribing the procedure to be followed in making assessments. They do not purport to limit the taxing power. The words are affirmative and relate to the manner in which the assessment power is to be exercised. The specified times for performance are not essential to the purpose of the statute. As long as the assessments are made in the year before the taxes are to be levied, including an allowance for time in which to appeal, the essential purpose of the statute is satisfied.

With specific reference to taxing statutes, Sutherland is again helpful. In 3 C. Sands, *Statutory Construction* § 66.06, at 199 (4th ed. 1974), the writer states:

"It is the policy of the law to insure the collection of all taxes, and whenever it is possible on any theory to do so the courts will construe the statutes to accomplish that result." Therefore statutes establishing the procedure for the collection of taxes are given a liberal construction.

(Footnotes omitted.) Among the cases cited for the latter proposition are *Schultz v. Kolb,* 189 Wash. 187, 64 P.2d 79 (1937) and *Spokane Cy. ex rel. Sullivan v. Glover,* 2 Wn.2d

162, 97 P.2d 628 (1940).

In the earlier of these cases, which involved the validity of a tax deed, this court observed that the courts are protective of the machinery by which taxes due the State and its subdivisions are collected for the support of government. The second case cited is one more analogous to the present case. There the question was whether the Legislature had, by amending the following statute to omit the italicized words, imposed upon county treasurers a mandatory duty to notify every taxpayer of the taxes due from him.

> The Treasurer shall [*when requested*] notify each taxpayer in his county, at the expense of the county, having printed on said notice the name of each tax and the levy made on the same, of the amount of his real and personal property, and the total amount of tax due on the same;

Laws of 1939, ch. 206, § 41, p. 763. It appeared that the performance of that duty, if the words were taken literally, would involve enormous expense and time, and if the provision was indeed mandatory, there would be large losses in revenue where titleholders could not readily be ascertained.

This court observed that while, ordinarily, the word "shall" when used in a statute is imperative and operates to impose a duty which may be enforced, the words "shall" and "may" are frequently used interchangeably and without regard to their literal meaning. It noted that in our own tax code, the word "shall" is used in almost every section, and that it is apparent that it is employed indiscriminately in both the imperative and the permissive sense.

Generally speaking, this court said, when statutes impose duties upon public officers, if the provisions affect the public interest, or are intended to protect a private citizen against loss or injury to his property, they are held to be mandatory rather than directory.

We said that, as in every other case involving statutory construction, the objective of the court is to ascertain the legislative intent, as disclosed by all the terms and provisions of the act in relation to the subject of legislation and by a consideration of the nature of the act, the general

object to be accomplished, and the consequences that would result from construing the particular statute in one way or another.

Noting that the Legislature was undoubtedly aware that the courts charge every owner with knowledge that his property is taxable every year, we found that the Legislature could not reasonably have intended to change that policy and make the owner's duty to pay taxes contingent upon his being sent a notice by the treasurer. This result also flowed from consideration of the enormous expenses that would be incurred and the "utter perversion of our system of taxation" which would occur were the law construed as mandatory. *Spokane Cy. ex rel. Sullivan v. Glover, supra* at 171.

Applying these principles to the question before us, we cannot conceive that the Legislature intended, in specifying the times at which assessment actions should be taken, to make the validity of the assessment depend upon strict compliance with those provisions. Even more than in the case of *Spokane Cy. ex rel. Sullivan v. Glover, supra,* the effect of such an interpretation would be to undermine the taxing system of the State, for we are told that the Clallam County Assessor does not stand alone in his inability to meet such deadlines, but rather it is a problem of many county assessors throughout the state.

We are shown no reason to suppose that the Legislature attached special significance to the time schedule which it laid out in these statutes. The interest of the State is in seeing that the assessments are made before the year in which the taxes are levied, which was done in this case.

Nor are these provisions designed to protect any interest of the taxpayer. The right which he is given is that of obtaining a review of the assessment if he questions its validity. There appears no reason why that review cannot be had as effectively in November as in August. The appellants have not shown that any right or interest of theirs has been adversely affected.

To read these provisions as mandatory would gravely

disserve the interests of this State and its people and would protect no right of any individual. The purpose of the taxing statutes would be effectively thwarted. Consequently, we cannot attribute to the Legislature an intent to use the word "shall" in this context, in its mandatory sense.

The appellants point to the fact that the assessment statutes do not use the word "shall" exclusively. RCW 84.40.040 provides that the assessor "may" add certain properties to the assessment list. The Legislature must have intended a distinction to be made between these two words, the argument goes, citing *Black Ball Freight Serv. v. United States*, 266 F. Supp. 287 (W.D. Wash. 1967). There the question was whether the pertinent Washington statute required the Washington Public Service Commission to consider "necessity" when issuing certificates of public convenience and necessity to carriers. The district court judge found that the words "may" and "shall" had been applied to different provisions in the same enactments, and said that in such context it could "hardly be questioned that the legislature intended 'may' as permissive and 'shall' as mandatory", *Black Ball Freight Serv.*, at 289, citing a Washington case, *State ex rel. Ry. Express Agency, Inc. v. State Pub. Serv. Comm'n*, 57 Wn.2d 32, 354 P.2d 711 (1960). While that opinion states that the word "may" is a permissive word, the case did not involve a statute which used both the words "shall" and "may".

The statute under consideration in *Black Ball Freight Serv.* was not one which fixed the time for official action, but rather one which fixed the criteria for the exercise of official judgment. In that context, as the court said, the use of the word "shall" with respect to some criteria and the word "may" with respect to others undoubtedly did indicate a legislative intent that some were mandatory and others permissive. Also there was a strong public interest there in the application of the correct criteria; whereas there is no such compelling interest in the timeliness of assessment procedures, so long as they are completed in time to allow for appeals and the imposition of the tax at

the intended time.

We would agree that the use of the word "may" in RCW 84.40.040 is permissive. But we are also convinced that the word "shall" as used in the provision specifying the times at which assessment procedures are to take place, was intended to be directory rather than mandatory.

The judgment is affirmed.

STAFFORD, UTTER, DOLLIVER, WILLIAMS, and PEARSON, JJ., concur.

DIMMICK, J. (dissenting)—I dissent. I find the duties imposed on the county assessors by the tax assessment statutes to be mandatory.

This court recently held: "Presumptively, the use of the word 'shall' in a statute is imperative and operates to create a duty rather than to confer discretion." *Clark Cy. Sheriff v. Department of Social & Health Servs.*, 95 Wn.2d 445, 448, 626 P.2d 6 (1981) (Rosellini, J.). Moreover, we have continuously adhered to the general rule that

> the use of the word "shall" in a statute is imperative and operates to create a duty (*State v. McDonald,* 89 Wn.2d 256, 571 P.2d 930 (1977); *State Liquor Control Bd. v. State Personnel Bd.,* 88 Wn.2d 368, 561 P.2d 195 (1977); *Spokane County ex rel. Sullivan v. Glover,* 2 Wn.2d 162, 97 P.2d 628 (1940); *State v. Dolman,* 22 Wn. App. 917, 594 P.2d 450 (1979)), and should be given its usual and ordinary meaning unless a contrary intent appears. *See Strenge v. Clarke,* 89 Wn.2d 23, 569 P.2d 60 (1977).

*State ex rel. Nugent v. Lewis,* 93 Wn.2d 80, 82, 605 P.2d 1265 (1980).

I recognize that this court and others have held that "shall" may be directory rather than mandatory. However, the instant case is not one warranting our straying from the general rules of construction.

The majority justifies its result by pointing to legislative intent indicating the directive nature of the statute. In doing so the majority asserts that the Legislature attached no special significance to the time schedule. Majority opin-

ion, at 626. It also states that the provisions are not designated to protect any interest of the taxpayer. Majority opinion, at 626. I cannot agree with such broad statements. This court must assume that the Legislature intended to make the statutes effective. The deadlines are intended to forestall any unwarranted delays by the county. Additionally, the assessors' deadlines are important to taxpayers. The taxpayer is required to pay the property taxes on April 30, 11 months from the valuation deadline. The taxpayer may pay one-half of those taxes in October. It is apparent that the May deadline is important to taxpayers as it allows them sufficient time to budget payments and to fully appeal the assessment. The verb "shall" is used throughout RCW 84.40. RCW 84.40.380 provides the taxpayer "shall" pay by April 30. I doubt any excuse would be acceptable if the taxpayer failed to meet this deadline. In fact, severe penalties are imposed if he is untimely. Conversely, a late evaluation by the county should result in its being penalized to the extent that it can only collect for the year taxes based on the previous valuation. This would not severely thwart the purpose of the taxing statutes as asserted by the majority at page 627.

The majority authorizes the county officials to ignore the legislative mandates. In doing so the majority recognizes the oft-heard excuse that the assessor's office was understaffed. It is not uncommon for county staffs to be inadequate. However, such an excuse cannot justify delayed actions contrary to statutory provisions. Although the County in the instant case valued the property within 2 months of the deadline and sent the notices out 35 days later, what is to prevent a county assessor from waiting 5 or 6 months before appraising the property and mailing out notices several months later? The statute, as now interpreted by the majority, does not prevent such abuses and the majority itself expresses no concern for such results.

I cannot join in the majority's circumvention of a clear legislative mandate imposing deadlines on county assessors.

Accordingly, I would reverse the trial court.

BRACHTENBACH, C.J., and DORE, J., concur with DIMMICK, J.