# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

LEGACY PARTNERS RIVERPARK ) No. 69073-6-I
APARTMENTS BUILDINGS A/B LLC; )
and LEGACY PARTNERS RIVERPARK )
APARTMENTS BUILDING E LLC, )
Delaware Limited Liability Corporations, )
)
          Appellants, )
)
     v. )
)
KING COUNTY, WASHINGTON, ) UNPUBLISHED OPINION
a Municipal Corporation, )
)
          Respondent. ) FILED: September 3, 2013
_____ )

VERELLEN, J. — The King County Assessor (Assessor) obtained summary judgment dismissing Legacy Partners' tax refund action. Legacy Partners appeals, challenging the Assessor's authority to correct erroneous property tax assessments in tax years 2010 (the 2009 assessment) and 2011 (the 2010 assessment). The Assessor had authority to correct the 2009 assessment of Legacy's new construction under the manifest error provision of RCW 84.48.065(1). The Assessor had authority to correct the 2010 assessment because the May 31, 2010 assessment finalization date provided under RCW 84.40.040 is directory rather than mandatory. We affirm.

## FACTS

Legacy Partners Riverpark Apartments Building A/B LLC and Legacy Partners Riverpark Apartments Building E LLC (collectively Legacy) own two new residential condominium buildings in Redmond, Washington.[1] The Assessor was aware of the development, and appraisal staff visited the site in June 2009 to value the improvements on the parcels.[2]

Before development of the parcels, the appraisal records listed a "placeholder" improvement value of $1,000 on each parcel. The placeholder entry signaled that future development would require valuation once construction was complete. Through a series of errors with respect to assessment years 2009 and 2010, the Assessor initially listed both parcels at an assessed value of $1,000 instead of at the actual assessed value.

*The 2009 Assessment (Payable in 2010)*

In June 2009, after substantial completion of the condominium construction, the Assessor conducted a site inspection. The Assessor generated a new construction production report that recognized the improvement values for assessment year 2009. The appraisal staff determined the fair market value of the improvements on Building A/B was $16,129,600, and on Building E was $14,135,900.

The Assessor entered these assessed values for each parcel into the Assessor's appraisal value tracking system. When the Assessor's appraisal staff input the

[1] Building A/B LLC owns parcel 733805-0010 and Building E LLC owns parcel 733805-0040.

[2] The certificate of occupancy for Building E was issued in August 2009, and the certificate of occupancy for Building A/B was issued in March 2010.

improvement values into its computer system, the software program placed an automatic hold on those improvements. The hold is designed to flag possibly erroneous assessed values, and places a hold on any assessed value increase of over 30 percent (or decreases of over 25 percent) from the previous year's value. A senior appraiser responsible for reviewing the holds failed to release the holds on these two parcels, so the 2009 assessment roll was finalized with the original $1,000 placeholder value for each parcel.

The Assessor learned of the mistake in late April or early May of 2010, at which point the Assessor's office had already billed the property taxes.[3] On April 29, 2010, and May 4, 2010, the Assessor requested corrections to the 2009 roll so the accurate improvement values that had initially failed to post would ultimately be included in the 2009 roll. The Assessor also sent notices to Legacy as required under RCW 84.48.065, explaining the value change was because of a "fail[ure] to post."[4] The Assessor issued corrected 2009 tax statements to Legacy on May 5, 2010.

*The 2010 Assessment (Payable in 2011)*

Because the Assessor did not learn of the assessment mistake until May 2010, the Assessor was not able to correct the $1,000 placeholder value before the initial 2010 assessments were issued early that year. The Assessor therefore sent initial assessment notices to Legacy that listed the erroneous $1,000 placeholder values. The placeholder values remained on the 2010 assessment roll until November 3, 2010, when the Assessor posted a correction to the 2010 roll. The Assessor sent updated

---

[3] The Assessor learned of the mistake from the owners of an adjacent parcel who received a notice listing the $1,000 improvement value placeholder.

[4] Clerk's Papers at 255, 257.

notices of value to Legacy on November 11, 2010.[5] The 2010 assessment roll was certified shortly thereafter, in December 2010, reflecting the accurate assessments for both parcels.

*Procedural History*

Legacy paid the corrected taxes for 2009 and 2010, and then challenged the revised 2009 and 2010 assessments in an appeal to the King County Board of Equalization, as well as in the instant action requesting a tax refund. In the instant action, the Assessor moved for summary judgment, and the court granted the motion. Legacy timely filed its notice of appeal.

DISCUSSION

Legacy challenges the revised tax assessments for years 2009 and 2010, contending the trial court erred in concluding the Assessor had authority to correct the placeholder values of $1,000 that were erroneously used in both assessment years. We review a trial court's summary judgment decision de novo.[6] We perform the same inquiry as the trial court, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party.[7]

Our objective in analyzing a statute is to ascertain and carry out the legislature's intent.[8] We derive the plain meaning of a statute from the ordinary meaning of the language at issue, in the context of the statute in which that provision is found, as well

---

[5] The 2010 improvement values shifted slightly from the 2009 values, with Building A/B valued at $14,997,400 and Building E valued at $15,433,300.

[6] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

[7] Id.; CR 56(c).

[8] Dep't of Ecology v. Campbell & Gwinn LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

as taking into consideration the statutory scheme as a whole.[9] If the meaning of a statute is plain on its face, then the court must give effect to that plain meaning as the expression of legislative intent.[10] It is well established that an unambiguous statute is not subject to the rules of statutory construction.[11]

*Manifest Error—The 2009 Assessment*

Legacy argues the Assessor lacked the authority under RCW 84.48.065(1) to correct the erroneous listing at the placeholder value of $1,000 for the 2009 assessment. RCW 84.48.065(1) provides the Assessor authority to correct erroneous assessments due to "manifest errors," provided the correction will not involve a revaluation of the property. The statute provides in pertinent part:

> The county assessor or treasurer may cancel or correct assessments on the assessment or tax rolls which are erroneous due to manifest errors in description, double assessments, clerical errors in extending the rolls, *and such manifest errors in the listing of the property which do not involve a revaluation of property* . . . . When the county assessor cancels or corrects an assessment, the assessor shall send a notice to the taxpayer in accordance with RCW 84.40.045, advising the taxpayer that the action has been taken and notifying the taxpayer of the right to appeal the cancellation or correction to the county board of equalization, in accordance with RCW 84.40.038. . . . No manifest error cancellation or correction . . . shall be made for any period more than three years preceding the year in which the error is discovered.[12]

Legacy argues that the Assessor ran afoul of RCW 84.48.065 when, in May 2010, it requested roll corrections to reflect the accurate improvement values for

---

[9] Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

[10] Campbell & Gwinn, 146 Wn.2d at 9-10.

[11] Dep't. of Transp. v. James River Ins. Co., 176 Wn.2d 390, 396, 292 P.3d 118 (2013).

[12] RCW 84.48.065(1) (emphasis added).

assessment year 2009, and that the roll correction constituted a prohibited revaluation of the improvements.[13]

The Assessor relies on the plain language of the statute, arguing the manifest error "catch-all" in the statute, "errors in the listing of the property which do not involve a revaluation of property," includes this exact error. "Revaluation" is defined as "a revised or new valuation or estimate."[14],[15] The Assessor valued the properties once, in June 2009. The Assessor's correction of the error involved removal of the automatic hold the appraisal program had placed on the updated improvement values the appraisal staff had entered in June 2009. Correction of the error did not require the Assessor to revalue the property, as staff had already entered the accurate June 2009 improvement values.[16]

---

[13] Legacy does not argue the Assessor failed to provide notice under the statute.

[14] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1942 (3d ed. 2002). The dictionary definition is consistent with the Department of Revenue's definition. See WAC 458-14-005(20) (defining "revaluation" as "a change in value of property based upon an exercise of appraisal judgment").

[15] The Assessor also relies on WAC 458-14-005(14), which defines "manifest error." The Department of Revenue has defined "manifest error" to mean "an error in listing or assessment, which does not involve a revaluation of property, including the following: . . . (b) A clerical or posting error; or . . . (j) Any other error which can be corrected by reference to the records and valuation methods applied to similarly situated properties, without exercising appraisal judgment." WAC 458-14-005(14). We find it unnecessary to rely on this section of the WAC because the plain language of the manifest error statute contemplates the type of mistake at issue in the case.

[16] Legacy also argues that the Assessor's correction of the assessments is inconsistent with the omit statute, RCW 84.40.080. The omit statute permits the Assessor to make a correction when improvements are omitted entirely from an assessment. RCW 84.40.080 ("Where improvements have not been valued and assessed as a part of the real estate upon which the same may be located, as evidenced by the assessment rolls, they may be separately valued and assessed as omitted property under this section."). The Assessor does not rely on RCW 84.40.080 to support its revised 2009 or 2010 assessments. RCW 84.40.080 applies only where

6

We affirm the trial court's determination that the Assessor had the authority to correct the erroneous 2009 assessment under RCW 84.48.065(1). The Assessor's actions fall squarely within the plain language of the statute. Further, the statute contemplates that correction of such errors may involve material changes to both the assessed value and the tax rolls.[17] As the Assessor highlights, if manifest errors such as this one were not correctable under RCW 84.48.065 (provided such correction took place within the three-year limitation provided in the statute), the statute would create a huge windfall to taxpayers whose property was mistakenly listed below the appraised value and would create a tax burden to taxpayers whose property was mistakenly listed above the appraised value.

*Timeliness Requirements for Listing New Construction—RCW 36.21.080*

Legacy argues the Assessor did not have authority to list Legacy's new construction on the assessment rolls after August 31 of either the 2009 or 2010 assessment years, relying upon RCW 36.21.080. RCW 36.21.080 provides authority to assessors to place new construction or significant renovation on the assessment roll up through August 31 of the assessment year. The statute provides:

---

no value at all was placed on the improvements. Here, the Assessor did value the improvements (although the correct values were not initially accurate), and the placeholder values signified that future development would require valuation once construction was complete. The omit statute does not apply to these facts.

[17] See RCW 84.48.065(1) ("The county assessor or treasurer may cancel or correct assessments on the assessment or tax rolls."). We decline to examine the legislative history of RCW 84.48.065, which Legacy urges us to consider. Legacy has not demonstrated that the plain language of the statute is ambiguous. Examination of legislative history is only appropriate where the plain language does not dictate the outcome. Campbell & Gwinn, 146 Wn.2d at 12.

> The county assessor is authorized to place any property that is increased in value due to construction or alteration for which a building permit was issued . . . on the assessment rolls for the purposes of tax levy up to August 31st of each year. The assessed valuation of the property shall be considered as of July 31st of that year.[18]

In contrast to the July 31 valuation date for new construction in RCW 36.21.080, all other real property is assessed according to its value "on the first day of January of the year in which it is assessed."[19]

Legacy contends that because the Assessor did not enter the accurate assessed value of its improvements (i.e., the new construction) until after August 31, 2009 for the 2009 assessment and until after August 31, 2010 for the 2010 assessment, the July 31 valuation date of RCW 36.21.080 does not apply to either assessment year.[20] Accordingly, Legacy argues that its tax liability stems from the assessed value of its parcels on January 1, 2009 ($1,000) and January 1, 2010 ($1,000).

As to the 2010 assessment, the Assessor correctly observes that RCW 84.40.040 rather than RCW 36.21.080 applies.[21] RCW 84.40.040 provides that assessors shall complete the listing and valuation of existing properties (i.e., not new construction) by May 31 of each year: "The assessor shall also complete the duties of

---

[18] RCW 36.21.080.

[19] RCW 84.40.020.

[20] For assessment year 2009, the parcels were placed into the system in June 2009, but due to the automatic hold, were not listed with the accurate improvement values until the May 2010 correction, after the August 31, 2009 deadline for listing new construction. For assessment year 2010, the parcels were listed on the assessment roll with the accurate improvement values by November 2010, after the May 31, 2010 deadline for listing existing construction.

[21] The Assessor had already placed Legacy's parcels on the 2009 rolls as new construction by May 2010. It is nonsensical to apply RCW 36.21.080 to a 2010 assessment of parcels that were no longer "new" and had already been placed "on the assessment rolls for the purposes of tax levy" in 2009 (albeit late). RCW 36.21.080.

listing and placing valuations on all property by May 31st of each year, except that the listing and valuation of construction and mobile homes under RCW 36.21.080 and 36.21.090 shall be completed by August 31st of each year."

As our Supreme Court held in Niichel v. Lancaster, the May 31 timeline set forth in RCW 84.40.040 is directory rather than mandatory.[22] The court reasoned:

> The statutes under consideration serve the purpose of prescribing the procedure to be followed in making assessments. They do not purport to limit the taxing power. The words are affirmative and relate to the manner in which the assessment power is to be exercised. The specified times for performance are not essential to the purpose of the statute. As long as the assessments are made in the year before the taxes are to be levied, including an allowance for time in which to appeal, the essential purpose of the statute is satisfied.[23]

Niichel is satisfied because the Assessor corrected the 2010 assessments before the 2010 tax roll closed, and in the year before the taxes were levied (2011). Further, Legacy had the time and ability to appeal the corrected 2010 assessment administratively. Legacy provides no authority that there must be time to fully complete the appeal process in the year before the tax is levied. Accordingly, the Assessor's November 3, 2010 revision to the parcels' value for the 2010 assessment year, although after the May 31 deadline, does not provide a basis for a refund.

---

[22] 97 Wn.2d 620, 626-27, 647 P.2d 1021 (1982) (concluding that to read "shall also complete" in RCW 84.40.040 as mandatory would "gravely disserve the interests of this State and its people and would protect no right of any individual. The purpose of the taxing statute would be effectively thwarted."). In Niichel, the taxpayer challenged the assessor's authority to raise the assessed value on the subject properties because the steps in the assessment process were delayed. Id. at 622.

[23] Id. at 624.

We need not consider the applicability of RCW 36.21.080 to the 2009

assessment because the manifest error statute permitted the Assessor to correct the

2009 assessment.[24]

---

[24] To the extent Legacy argues the manifest error statute would never extend to a late listing of new construction, it provides no authority for that proposition. Further, even if we applied RCW 36.21.080 to the 2009 assessment as Legacy urges us to do, we would reach the conclusion that the August 31 deadline is directory rather than mandatory. Niichel's rationale that the May 31 deadline in RCW 84.40.040 is directory rather than mandatory applies with equal force to RCW 36.21.080. As the Niichel court explained, "[T]he courts charge every owner with knowledge that his property is taxable every year . . . . Applying these principles to the question before us, we cannot conceive that the [l]egislature intended, in specifying the times at which assessment actions should be taken, to make the validity of the assessment depend upon strict compliance with those provisions." Niichel, 97 Wn.2d at 626. The Niichel court further reasoned that RCW 84.40.040 was a statute "'specifying a time within which a public officer is to perform an official act regarding the rights and duties of others'" rather than a statute limiting the power of the officer. Id. at 623 (quoting State v. Miller, 32 Wn.2d 149, 155, 201 P.2d 136 (1948)). Similar to RCW 84.40.040, RCW 36.21.080 specifies a time within which the Assessor must value new construction and place it on the assessment rolls. RCW 36.21.080 simply provides the Assessor more time to list and value new construction than it provides to value existing property, and provisions in regard to time or method are generally interpreted as directory only. Id. at 624. Both RCW 84.40.040 and RCW 36.21.080 prescribe the procedure for making assessments and do not limit the county's taxing authority. Id.

Legacy also contends the August 31 deadline of RCW 36.21.080 must be mandatory because the deadline "reflects a reasonable legislative judgment as to when new construction listing must be completed in order to permit property taxes to be calculated and imposed in the manner contemplated by law." Appellant's. Br. at 14. Legacy explains that because new construction increases the aggregate amount of tax that a district may levy, new construction listings must be timely completed to allow taxing districts to include that value in determining tax levies. Appellant's Br. at 14-16 (citing RCW 84.55.010). While Legacy's argument is technically correct, it cannot be reconciled with the manifest error statute, RCW 84.48.065(1), which specifically contemplates a retroactive adjustment to both assessments and to the tax rolls including errors over the past three years. The Niichel court did not consider the relationship between RCW 84.04.080 and the manifest error statute. For this reason, we are not concerned with the Niichel court's statement that assessments be completed in the year before the taxes are actually levied. Niichel, 97 Wn.2d at 624.

## CONCLUSION

The Assessor's correction of the automatic hold on the 2009 valuation of the improvements did not involve any "revaluation," and RCW 84.48.065 applies to this manifest error in the 2009 assessment. The correction of the 2010 assessment after the May 31 deadline of RCW 84.40.040 was permissible because, under established case law, the deadline is directory and not mandatory. Legacy does not establish it is entitled to a refund.

Affirmed.

WE CONCUR:

11