[No. 36000. Department One. January 10, 1963.]

HERRETT TRUCKING COMPANY, INC., *et al., Respondents,* v. WASHINGTON PUBLIC SERVICE COMMISSION *et al., Appellants.*

THE STATE OF WASHINGTON, *on the Relation of Cement Distributors, Inc., et al., Respondents,* v. WASHINGTON PUBLIC SERVICE COMMISSION *et al., Appellants.**

*Reported in 377 P. (2d) 871.

*The Attorney General* and *James R. Cunningham, Assistant,* for appellant Washington Public Service Commission.

*B. E. Lutterman, Warren H. Ploeger,* and *Richard L. Gemson,* for appellant Chicago, Milwaukee, St. Paul & Pacific Railroad Company.

*Don Cary Smith* and *Norman Sutherland,* for respondents Herrett Trucking Company, Inc. et al.

*Reaugh, Hart & Allison, George H. Hart, William Q. Marshall,* and *Reuben C. Youngquist,* for respondents Cement Distributors, Inc. et al.

HILL, J.—This is a review of two separate judgments of the Thurston County Superior Court reversing and remand-

ing an order of the Washington Public Service Commission.

The Chicago, Milwaukee, St. Paul & Pacific Railroad Company, hereinafter called "Milwaukee," sought to acquire portions of the outstanding common carrier permit (motor carrier) held by D. A. Whitley, Inc., hereinafter called "Whitley."

Whitley was the holder of permit No. 3883, which authorized, *inter alia,* the following service:

"Intrastate, irregular route, non-radial service as a carrier of Heavy Machinery; Building Materials; and Cement in bulk in tank or bottom dump vehicles or similar specialized equipment in the State of Washington; . . ."

Milwaukee desired to acquire these rights to supplement its common carrier permit No. 16591, granting it limited intrastate motor carrier rights between Beverly, Washington and the Wanapum Dam site; one objective being to develop a coordinated rail and motor carrier service to construction sites at a distance from railheads.

At the hearing before the Public Service Commission, on the application for the transfer of the enumerated rights under the Whitley permit to Milwaukee, one group of intervenors including Herrett Trucking Company, Inc., hereinafter called "Herrett," protested the transfer of the right to haul heavy machinery and building materials; and another group of intervenors including Cement Distributors, Inc., hereinafter called "Cement Distributors," protested the transfer of the right to haul bulk cement.

The Public Service Commission rule[1] applicable to our present inquiry is Rule 21 (g), which is as follows:

"Only such permit rights as can be shown to have been in reasonably active and regular use will be transferred.

[1]The rule making power is found in RCW 81.80.290, which reads in part as follows:

"The commission shall have power and authority, by general order or otherwise, to prescribe rules and regulations in conformity with this chapter to carry out the purposes thereof, applicable to any and all 'motor carriers,' or to any persons transporting property by motor vehicle for compensation even though they do not come within the term 'motor carrier' as herein defined."

Generally, a period of only one year immediately prior to the date of the application will be considered, but regard will be had for changing circumstances. Dormant rights will not be transferred unless public need for the service can be shown."

The Commission found that the intrastate operating rights of Whitley, as a carrier of heavy machinery and building materials, "have been reasonably active and regularly used," but that the rights relative to the hauling of cement in bulk in tank or bottom dump vehicles or similarly specialized equipment were dormant.

However, the Commission further found that:

"Public need for the services provided under the dormant rights has been shown by the applicant within the purview of Rule 21 (g) of the rules and regulations governing motor freight carriers as follows: Cement in bulk in tank or bottom dump vehicles or similar specialized equipment from railheads to job sites in the State of Washington." (Finding No. 11)

The order of the Commission was that the application for the transfer of rights under Whitley's common carrier permit No. 3883 to Milwaukee, the holder of common carrier permit No. 16591, be granted in part and that permit No. 16591 be amended and reissued.

The amended and reissued permit was then set forth in full. The portion with which we are concerned authorized service by Milwaukee as follows:

". . . Irregular route, non-radial service as a carrier of Heavy Machinery; and Building Materials in the State of Washington; Cement in bulk in tank or bottom dump vehicles or similar specialized equipment from rail heads to job sites in the State of Washington. . . ."

It will be noted that with reference to cement in bulk, the Commission has limited the general authorization in the Whitley permit to hauls "from rail heads to job sites."

Herrett and certain other intervenors obtained a writ of review from the Superior Court for Thurston County, attacking the transfer of the Whitley rights to haul heavy machinery and building materials; and that court reversed

and remanded the order of the Commission. Whitley and Milwaukee appeal to this court from that judgment as does the Commission.

Cement Distributors and certain other intervenors also secured a writ of review from the Superior Court for Thurston County, attacking the transfer of the Whitley rights to haul cement in bulk; and that court reversed and remanded the order of the Commission. Whitley and Milwaukee appeal to this court from that judgment, as does the Commission.

We have before us the consolidated appeals from the two judgments.

The findings of fact of the Commission are by statute prima facie correct, and the burden is on the one attacking the order to show that it is unreasonable or unlawful. RCW 81.04.430; see also RCW 80.04.170 (findings of Commission subject to test of "reasonableness and lawfulness").

■ In discussing the weight to be accorded the trial court's findings on a review of administrative action, we said in *Department of Transp. v. Snohomish Cy.* (1949), 35 Wn. (2d) 247, 249, 212 P. (2d) 829, 831:

"We will, therefore, consider this matter on the merits. In so doing, we will keep in mind that the trial court was also a reviewing court and, as such, did not see the witnesses or hear them testify, and had to reach its conclusions from a transcript of the oral evidence given at the departmental hearing and the exhibits submitted therein. We also must review the judgment appealed from upon the same evidence and exhibits, and are, therefore, not required to give the findings of the trial court the same weight which we ordinarily give when a case is tried before the court without a jury and the trial court sees and hears the witnesses."

We have before us a different situation, with reference to each of the three classifications: building materials, heavy machinery, and cement in bulk.

As to the hauling of building materials, the question is whether there is evidence to sustain the Commission's finding that the intrastate operating rights of Whitley have been "reasonably active and regularly used."

The trial court, after its examination of the record, con-

cluded that there had been no reasonably active and regular use under the intrastate permit under either the classification of building materials and heavy machinery and that the permit, as to those classifications, was nontransferable.

Our examination of the record satisfies us that the trial court was correct as to the permit for the hauling of building materials.

The Commission, in its summary of the evidence, said:

"Transferor has been actively engaged in the transportation of building materials such as structural steel and wooden and steel forms for missile bases in the Beverly and Royal slope areas. . . ."

 This is misleading and immaterial, because the hauls referred to were made after the application for the transfer, and the Commission's own rule (rule 21(g), *supra*) infers that only use before an application for transfer will be considered on the issue of dormancy. Its own notice of hearing[2] on an application for transfer reflects this position.

In an unreported proceeding (Washington Utilities and Transportation Commission v. Chester E. Davis (hearing

---

[2]"GREETING: YOU ARE HEREBY NOTIFIED That in connection with your application for transfer of the common carrier permit herein that at the same time and place and as a part of the hearing on said application, the commission will inquire into existing operations under the permit.

"Rule 21(g) of the Rules and Regulations Governing Motor Freight Carriers provides that in transferring a permit only permit rights as can be shown to have been in active and regular use will be transferred. As a basis for examining into whether or not all rights have been exercised, the commission will usually only consider the business of the twelve months preceding the filing of the application; however, consideration will also be given to changing conditions. Please note, therefore, that to successfully accomplish a transfer of this permit it will be necessary, among other things, that evidence be adduced as to the operations that have been performed under the permit by the transferor, otherwise the application will be denied or the permit will be amended to conform to the operations that have been shown to have been conducted. Proof of exercise of rights may be made by producing bills of lading, freight bills, records or other pertinent memoranda.

"DATED at Olympia, Washington,
 "WASHINGTON PUBLIC SERVICE COMMISSION
 "By WESLEY L. BARCLIFT, Executive Secretary."

No. 4274) Order M. V. 75915) Davis sought to transfer his rights under a permit to haul heavy machinery and the Commission found that right to be dormant and commented that little, if any weight could be given to movements of heavy machinery occurring after the permit holder had entered into negotiations to transfer it. The Commission had clearly in mind that a transferor should not be permitted to buttress its case for transfer by activities subsequent to the application.

Apart from the hauls of building materials, made after the application for the transfer, the record simply does not support a finding of "active and regular use," and we agree with the trial court that Whitley's rights to haul building materials were not subject to transfer within the purview of Rule 21 (g).

The situation with reference to the rights to haul heavy machinery is quite different. The Commission's summary of evidence also states:

" . . . An examination of transferor's Exhibit 1, . . . shows that the transferor engaged in the hauling of heavy machinery throughout the State of Washington in 1959. . . ."

That statement, in its use of the words "throughout the State of Washington," is likewise misleading because while exhibit No. 1 does show substantial movements of heavy machinery in eastern Washington during 1959,[3] it discloses no hauls of heavy machinery in western Washington. This the Commission concedes in its brief.

It does not follow, however, that a carrier actively and regularly engaged in hauling of a particular type, such as heavy machinery, in one part of the state should have its intrastate permit to haul heavy machinery declared dormant because it is not hauling in all parts of the state.

There is a marked distinction between a failure to actively and regularly engage in the hauling of a specific classification of freight *in any part of the state,* and the

---

[3]The application for transfer of the permit rights was made in January, 1960, and the year immediately preceding the application was 1959.

failure, while actively and regularly engaging in the hauling of a specific classification of freight, to be so engaged *in every part of the state.*

It is obvious that relatively small carriers of the Whitley status cannot operate in all parts of the state at the same time, and that the area in which big dams and missile sites are being built offers a natural and logical reason for a limitation of their services to such an area during the period of such construction. Whitley's failure to operate in the western part of the state in 1959, under the circumstances, does not indicate an intention to abandon state-wide service.

Whether a failure to do hauling for a certain period of time in a certain section of the state renders the intrastate permit dormant in that area, is a matter of first impression. However, the Commission is supported by sound authority in its position: That the mere failure to operate in one portion of the state does not affect an intrastate permit, unless there is an intent to abandon state-wide service. *Hazard Express v. Hayes Freight Lines* (Ky. 1952), 245 S. W. (2d) 585; *J. E. Bejin Cartage Co. v. Public Ser. Comm.* (1958), 352 Mich. 139, 89 N. W. (2d) 607.

▆ In *Willamette Hauling Co. v. Kuykendall* (1953), 43 Wn. (2d) 731, 734-35, 263 P. (2d) 827, 829-30, we considered the revision of permits due to nonexercise pursuant to RCW 81.80.280[4] and said:

". . . The respondent was authorized and required to haul general freight; it failed to either haul general freight or put itself in a position so to do. Appellant was very lenient with respondent and did not alter its permit to exclude the transportation of general freight until it became satisfied that respondent not only had failed to equip itself so to do, but had no intention to haul freight other than heavy equipment and building materials consisting

---

[4]"Cancellation of permits. Permits may be canceled, suspended, altered or amended by the commission after notice and hearing upon complaint by any interested party, or upon its own motion, when the permittee or his or its agent has repeatedly violated this chapter, the rules and regulations of the commission or the motor laws of this state or of the United States, or the permittee has made unlawful rebates or has not conducted his operation in accordance with the permit granted him. . . ."

of lumber only, notwithstanding its protestations and promises to the contrary."

We have no such situation here. Assuming that "reasonably active and regular use" pursuant to Rule 21(g) is established, as was certainly the case with Whitley in its hauls of heavy machinery in eastern Washington, a mere nonuse of the permit in another portion of the state would not, in itself, warrant a revocation or revision of its state-wide permit rights. On an application for a transfer of state-wide hauling rights, the Commission, before determining that the permit was dormant as to any area, would consider such factors as whether the transferor was equipped to do the hauling authorized by its permit and the intent and its willingness to provide state-wide service if requested.

There was here, in addition to the evidence of many hauls of heavy machinery in 1959, the testimony that Whitley had never refused to make trips into western Washington and that it held itself ready to serve that part of the state, if requested so to do. There was no evidence of any intent to abandon its intrastate rights.

The Commission, on the evidence before it, was justified in concluding that so far as the hauling of heavy machinery was concerned, Whitley had abandoned none of its rights under its permit and that the evidence would warrant the finding and conclusion that there had been "reasonably active and regular use" of its authority under its permit for the hauling of heavy machinery. The trial court erred in its conclusion to the contrary.

With reference to the bulk cement, both the Commission and the superior court proceeded on the basis that the permit was dormant. Rule 21(g) states that:

" . . . Dormant rights will not be transferred unless public need for the service can be shown."

The Commission found that a public need had been shown, not for the right to haul bulk cement as stated in the permit, but for that right limited to hauls from railheads to job sites, and concluded that there was a public need for such service.

The trial court concluded that a public need had not been shown and reversed the Commission.

The Commission had not defined "public need," nor has this court in this particular connection. The briefs suggest three possible definitions or standards:

1. The carriers opposing the transfer of this portion of the permit, urge that it means "public convenience and necessity," as defined by the Interstate Commerce Commission, *viz.*, (a) there must be a showing that the new operation will serve a useful public purpose, responsive to a public demand or need; (b) that such purpose cannot and will not be served as well by existing carriers.

2. Milwaukee urges that when permit rights are dormant, the Commission must treat the application for transfer as one for a new permit, or for an extension of an existing permit pursuant to RCW 81.80.070. This would require, as a showing of public need, that the applicant has definite prospects and guarantees (as distinguished from hopes) that the proposed service would be used, and the applicant must meet and overcome any contention that the proposed service will unreasonably congest the highways, or unreasonably endanger the stability and dependability of existing service essential to the public need, considering the amount and type of service.

3. The Commission takes the position that the standard is whether it is in the public interest and not necessarily its effect upon competitors.

We will comment but briefly on these three theories of what constitutes "public need," because it would seem that the Commission should know better than anybody else what it had in mind in using the words "public need" in Rule 21(g). However, buttressing its position are certain obvious objections to the standards urged by the objecting motor carriers and to those urged by Milwaukee.

To apply a convenience-and-necessity test would be to read into RCW 81.80.270[5] and Rule 21(g), *supra*, something

---

[5]RCW 81.80.270, so far as material, is as follows:

"No permit issued under the authority of this chapter shall be construed to be irrevocable. Nor shall such permit be subject to transfer or

which neither the legislature nor the Commission has seen fit to do. Certificates of public convenience and necessity have been discontinued in this state, so far as motor freight carriers are concerned, and the present statutory regulation of such carriers does not use those terms.

The "prospects and guarantees" test is subject to the same objection. If the legislature had intended such a test, it could have so provided.[6]

In interpreting one of the Commission's own rules the courts of this state (superior or supreme), in common with others, are committed to a policy of judicial self-restraint with respect to the judgment of the Commission. The courts do not interfere with the decisions of administrative bodies when they have acted within the ambit of their proper competence, unless, as said in *State ex rel. Model Water & Light Co. v. Department of Public Ser.* (1939), 199 Wash. 24, 35, 90 P. (2d) 243, 249:

" . . . the clear weight of the evidence is against its conclusions, or unless it has mistaken the law applicable to the matter adjudicated, or, as sometimes expressed, unless the findings show evidence of arbitrariness and disregard of the material rights of the parties to the controversy. . . ."[7]

The record discloses that a definite need exists for co-ordinated rail-truck service in the transportation of bulk cement; and the evidence supports the proposition that a combination lower-cost rail service with flexible motor carrier service for through movement from railheads to job sites is in the public interest.

---

assignment except upon a proper showing that property rights might be affected thereby, and then in the discretion of the commission, and upon the payment of a fee of twenty-five dollars."

[6]However, to the extent that the Milwaukee's proposed test ties into the statute (RCW 81.80.070), it must be conceded that the Commission may deny an application when it appears that the additional service would unreasonably congest the highways, or tend to impair the stability and dependability of services essential to the public need.

[7]This case is cited and quoted many times. See, for example: *State ex rel. Oregon-Washington R. & Nav. Co. v. Walla Walla Cy.* (1940), 5 Wn. (2d) 95, 104 P. (2d) 764; *Manlowe Transfer & Distributing Co. v. Department of Public Ser.* (1943), 18 Wn. (2d) 754, 758, 140 P. (2d) 287, 155 A. L. R. 928.

There is nothing to indicate that a permit enabling Milwaukee to furnish that type of service would result in any impairment of the transportation service presently available to the public, or that it would adversely affect the public interest.

The trial court should not have substituted its judgment for that of the Commission, as to what constitutes a public need with reference to the transfer of the permit authorizing the hauling of bulk cement with the limitation that it be from railheads to job sites.

It is to be noted that while we have criticized statements by the Commission, in its summation of the evidence, as inaccurate and misleading, we have disagreed with only one of its findings of ultimate fact, *i.e.*, that the right to haul building materials has been "reasonably active and regularly used." The clear weight of the evidence is against that finding, and the Commission's own rule is that "Only such permit rights as can be shown to have been in reasonably active and regular use will be transferred." We have not attempted to pass on whether that right is dormant or abandoned, or whether there is any public need for its exercise. We simply hold that the finding of fact requisite to a transfer is not sustained by the evidence.

The trial court will enter orders in the appropriate actions, affirming the order of the Commission in all respects, except as to the transfer of the rights to haul building materials, and remand Order M.V. 72607 to the Washington Public Service Commission for appropriate action not inconsistent with this opinion.

FINLEY, C. J., WEAVER, and ROSELLINI, JJ., concur.

March 21, 1963. Petition for rehearing denied.