[No. 40264.   En Banc.   December 31, 1969.]

BLACK BALL FREIGHT SERVICE et al., *Appellants*, v. WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION et al., *Respondents.**

*Reported in 463 P.2d 169.

Reaugh, Hart, Allison, Prescott & Davis, George H. Hart, and Jack R. Davis, for appellants.

The Attorney General and Robert E. Simpson, Assistant, for respondent Washington Utilities and Transportation Commission.

George R. LaBissoniere, for respondents Becker et al.

HILL, J.—To give this case its proper setting we quote from *City Sanitary Serv., Inc. v. Washington Util. & Transp. Comm'n*, 64 Wn.2d 739, 741, 393 P.2d 952 (1964), as follows:

> The Washington Utilities and Transportation Commission is an administrative agency, and as such is a fact-finding tribunal. *Herrett Trucking Co. v. Washington Public Ser. Comm.*, 58 Wn. (2d) 542, 364 P. (2d) 505; *State ex rel. Arrow Transp. Co. v. Washington Util. & Transp. Comm.*, 60 Wn. (2d) 825, 376 P. (2d) 433. Its findings of fact are by statute (RCW 81.04.430) made prima facie correct, and the burden is upon the one attacking a finding, conclusion or decision to show that it is unlawful, unsupported by material and substantial evidence, or is arbitrary or capricious. RCW 34.04.130(6) [1]; *Herrett Trucking Co. v. Washington Public Ser. Comm.*, supra; *Herrett Trucking Co. v. Washington Public Ser. Comm.*, 61 Wn. (2d) 234, 377 P. (2d) 871. See also *State ex rel. Dawes v. Washington State Highway Comm.*, 63 Wn. (2d) 34, 385 P. (2d) 376. Courts should not and will not interfere with or substitute their judgment for a decision of the commission when it has properly acted within the sphere of its purpose, expertise, and competence. *Herrett Trucking Co. v. Washington Public Ser. Comm.*, 61 Wn. (2d) 234, 377 P. (2d) 871.

Fully conscious of the limitation placed on our review of decisions of such administrative agencies, we turn our attention to the present controversy.

---

[1]This action was initiated before the amendment of RCW 34.04.130(6), which substituted the "clearly erroneous" test for the "material and substantial evidence" test.

The Becker Transfer Co. (hereinafter Becker) filed an application with the Washington Utilities and Transportation Commission (hereinafter the Commission) to transfer to Peninsula Truck Lines, Inc. (hereinafter Peninsula) the Mason, Kitsap, Grays Harbor, Clallam and Jefferson[2] counties portion of their irregular route[3] radial freight hauling permit. The permit originally authorized, *inter alia*, the transportation of general freight between Seattle and points in Western Washington, excluding the city of Lynden.

Several auto freight carriers protested, filing a complaint and petition with the Commission (or intervening) alleging that Becker had not actively exercised the portion of the rights sought to be transferred; that sparse and sporadic operations had been conducted for the purpose of reactivating the dormant permit rights; and that the application for transfer would be tantamount to an authorization of a new service without establishing that public convenience and necessity require such service.

A hearing was held before the Commission's examiner, and subsequent thereto he prepared "Proposed Findings of Fact, Conclusions of Law and an Order Denying Application and Dismissing Complaint." The reason given for denial of the application for transfer was:

> The unit of irregular route, which the applicants seek to segment, is not divisible into component areas for the purpose of transfer. The piecemeal area segmentation of units of irregular route authority does not appear consistent with the nature of the rights involved.

Exceptions to portions of the proposed order were filed

---

[2] Peninsula already held service rights in Clallam and Jefferson counties, and the transfer by Becker was merely for the purpose of eliminating a competitor in that area. Pursuant to this intent, Becker also sought cancellation from its permit of authority which duplicated the authority it sought to transfer.

[3] For a discussion on the differences between a regular route scheduled carrier and an irregular route nonscheduled carrier, *see, Northern Pac. Transport Co. v. Washington Util. & Transp. Comm'n*, 69 Wn.2d 472, 418 P.2d 735 (1966).

by all of the parties appearing before the Commission. After reviewing the proposed order and the record on which it was based, the Commission issued its order rejecting the examiner's proposed findings and order, and granting the requested transfer.

Thereafter, under the provisions of the Washington State Administrative Procedure Act (RCW 34.04) two of the protestants, Poulsbo-Seattle Auto Freight, Inc. (hereinafter Poulsbo) and Black Ball Freight Service (hereinafter Black Ball) obtained a writ of review from the Superior Court for Thurston County. That court affirmed the Commission's order granting the transfer. This appeal by Black Ball and Poulsbo followed.

■ Appellants first claim that the rights transferred are not assignable because they are dormant,[4] and that the Commission's finding to the contrary is unsupported by material and substantial evidence.[5] While the record does not show extensive operation under the permit, it undeniably shows operation. It must be remembered that the common carrier permit here involved called for nonscheduled, irregular route service. As such, readiness, willingness and ability to serve are more significant elements in determining the issue of dormancy than is a mere numerical calculation of the number of shipments. *Van Arsdale v. King,* 149 So.2d 353 (Fla. 1963). *See also, Bennett v. State Corp. Comm'n,* 73 N.M. 126, 385 P.2d 978 (1963); and *Neuswanger v. Houk,* 170 Neb. 670, 104 N.W.2d 235 (1960).

In *Herrett Trucking Co. v. Washington Pub. Serv. Comm'n,* 61 Wn.2d 234, 242, 377 P.2d 871 (1963), we stated:

On an application for a transfer of state-wide hauling rights, the Commission, before determining that the per-

---

[4]Rule 9(g) of the Commission's Rules and Regulations Governing Motor Freight Carriers Operating Under Permit states:

Prior to consideration of an application for transfer, if the Commission believes that the permit or any of the rights therein, is, or are, dormant, the Commission shall file a complaint to revise, alter or amend a permit to contain only such permit rights as can be shown to have been in reasonably active and regular use, unless the applicant consents to the elimination of the dormant authority.

[5]RCW 34.04.130(6). See note 1.

mit was dormant as to any area, would consider such factors as whether the transferor was equipped to do the hauling authorized by its permit and the intent and its willingness to provide state-wide service if requested.

There was here, in addition to the evidence of many hauls of heavy machinery in 1959, the testimony that Whitley had never refused to make trips into western Washington and that it held itself ready to serve that part of the state, if requested so to do. There was no evidence of any intent to abandon its intrastate rights.

In this case, Becker maintained equipment consistent with the size and scope of its operation and was in a position to provide service under its permit when called upon to do so. There was no evidence of intent to abandon any of its rights.

Although the *Herrett* case involved statewide rights, while we are dealing here with only three counties, the rationale and standards as to what constitutes dormant rights remain the same.

Clearly the Commission's finding that the rights which Becker sought to transfer to Peninsula were not dormant is sustained by material and substantial evidence within the purview of the dormancy cases we have cited.

Appellants also argue that no evidence was offered to show that "public convenience and necessity" required the service Peninsula would perform under the transferred authority. They base their contention on the theory that when one considers the policy of the statutory regulations of motor common carrier service under RCW 81.80.020,[6] sound

---

[6]RCW 81.80.020. "The business of operating as a motor carrier of freight for compensation along the highways of this state is declared to be a business affected with a public interest. The rapid increase of motor carrier freight traffic and the fact that under the existing law many motor trucks are not effectively regulated have increased the dangers and hazards on public highways and make it imperative that more complete regulations should be employed to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that congestion on highways may be minimized; that the shippers of the state may be provided with a stabilized service and rate structure; that sound economic conditions in such transportation and among such carriers may be fostered in the public interest; that adequate, economical, and efficient service by

regulation requires an evaluation of the need for proposed new and different competitive operations whether they are by transfer, acquisition of control, or direct application for new authorities. It is argued that, in effect, the Commission has in this case authorized a totally new and different service which must therefore meet the "public convenience and necessity" test of RCW 81.80.070.[7]

■ No cases are cited by the appellants, and we find none, where there has been a determination, under such facts, that there would be a new and different service. The authority of the permit would remain the same, *i.e.*, irregular route, radial freight hauling, and the only difference

motor carriers, and reasonable charges therefor, without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices may be promoted; that the common carriage of commodities by motor carrier may be preserved in the public interest; that the relations between, and transportation by and regulation of, motor carriers and other carriers may be improved and coordinated so that the highways of the state of Washington may be properly developed and preserved, and the public may be assured adequate, complete, dependable and stable transportation service in all its phases."

[7] RCW 81.80.070. "No 'common carrier,' 'contract carrier,' or 'temporary carrier' shall operate for the transportation of property for compensation in this state without first obtaining from the commission a permit so to do. Permits heretofore issued or hereafter issued to any carrier, shall be exercised by said carrier to the fullest extent so as to render reasonable service to the public. Applications for common or contract carrier permits or extensions thereof shall be on file for a period of at least thirty days prior to the granting thereof unless the commission finds that special conditions require the earlier granting thereof.

"A *permit or extention* thereof shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the services proposed and conform to the provisions of this chapter and the requirements, rules and regulations of the commission thereunder, and that such operations will be consistent with the public interest, and, in the case of common carriers, that the same are or will be required by the present or future *public convenience and necessity,* otherwise such application shall be denied.

"Nothing contained in this chapter shall be construed to confer upon any person or persons the exclusive right or privilege of transporting property for compensation over the public highways of the state." (Italics ours.)

would be if Peninsula were to increase the activity under the permit. The effect of this might be more competition to the appellants, but the action would be under the same permit, and could not exceed its limits. The fact of increased competition alone was no legal significance since appellants are not entitled to immunity from competition. *See State ex rel. Adams Transport, Inc. v. Washington Pub. Serv. Comm'n,* 54 Wn.2d 382, 340 P.2d 784 (1959).

The only complaint they would have against competition would be from competitive practices which impair the transportation service presently available to the public and thereby fall within the ambit of "unfair or destructive competitive practices" under RCW 81.80.020. *Northern Pac. Transport Co. v. Washington Util. & Transp. Comm'n,* 69 Wn.2d 472, 418 P.2d 735 (1966).

Even if this were somehow considered to be a new and different service, the standards relating to the issuance of a new authority have no application when dealing with the transfer of an existing authority. Appellants fail to recognize that we are dealing here with existing rights, transferable upon meeting the conditions prescribed by RCW 81.80.270.[8] That statute makes no requirement for a showing of public need, necessity or convenience on a transfer. We are not, as appellant seems to claim, faced with an application for new operating authority or an extension of authority which would demand findings consistent with RCW 81.80.070,[9] *i.e.,* a showing of public convenience and necessity.

█ Finally, appellants contend that this segmentation of an irregular route radial authority is improper. This contention is likewise without merit. The same argument was made in *State ex rel. Adams Transport, Inc. v. Washington Pub. Serv. Comm'n, supra,* and we stated at 386:

---

[8]RCW 81.80.270. "No permit issued under the authority of this chapter shall be construed to be irrevocable. Nor shall such permit be subject to transfer or assignment except upon a proper showing that property rights might be affected thereby, and then in the discretion of the commission, and upon the payment of a fee of twenty-five dollars."

[9]See note 5.

The act is silent upon this question. It neither specifically authorizes nor prohibits such a transfer.

The Washington Public Service Commission's[10] administrative interpretation of the act sanctions transfer of a part of a permit. We find nothing illegal or impractical in this administrative interpretation of the act. In any event, we have not been persuaded to substitute our judicial wisdom for its administrative policy.

We again are not persuaded to overrule the administrative policy. County lines are clear cut and easily defined geographical units subject to easy policing by the Commission and identifiable territory to the shippers. As such the Commission's ruling cannot be said to be arbitrary and capricious, or without substantial supporting evidence.

The judgment appealed from is affirmed.

ALL CONCUR.

---

[10]The title was changed in 1961 to the Washington Utilities and Transportation Commission.