**WEAVER BROS, INC., Appellant,**

v.

**ALASKA TRANSPORTATION COMMIS-
SION, K & W Trucking Co., Inc., O. G.
Ness doing business as O. G. Ness Truck
Company, Appellees.**

No. 3577.

Supreme Court of Alaska.

Dec. 29, 1978.

Edward T. Noonan and Charles E. Cole,
Law Offices of Charles E. Cole, Fairbanks,
for appellant.

Douglas A. Hebbel and Thomas Wick-
wire, Asst. Attys. Gen., Anchorage, and Av-
rum M. Gross, Atty. Gen., Juneau, for ap-
pellee Alaska Transp. Commission.

H. Russel Holland, Holland & Thornton,
Anchorage, for appellee K & W Trucking
Co., Inc.

George L. Benesch, Anchorage, for appel-
lee O. G. Ness.

Before BOOCHEVER, Chief Justice, and
RABINOWITZ, CONNOR and BURKE,
Justices.

## OPINION

CONNOR, Justice.

This case challenges a decision of the Alaska Transportation Commission, approving the transfer of a motor carrier permit. Orville G. Ness, doing business as O. G. Ness Truck Company, applied to the Alaska Transportation Commission for approval to transfer his motor carrier permit[1] to K & W Trucking Co., Inc. Three carriers filed protests to this transfer application, but two of them withdrew from the case, leaving appellant Weaver Bros., Inc. as the sole protestant.

Weaver Bros.' principal objection was that certain portions of Ness's operating authority were dormant, primarily because Ness allegedly had not transported goods between and within certain geographic areas as authorized by his permit.[2] AS 42.10.-220(b)[3] and a Commission regulation[4] provide that only those operating rights shown to be in regular and active use may be transferred. The Commission, finding that Ness's operating rights were not dormant,

1. Ness's permit gave him the following operating rights:
 "I. GENERAL COMMODITIES EXCEPT CLASS A AND B EXPLOSIVES AND HOUSEHOLD GOODS AS DEFINED BY THE INTERSTATE COMMERCE COMMISSION.
 BETWEEN ALL POINTS AND PLACES IN ZONE 5A.
 BETWEEN ALL POINTS AND PLACES IN ZONE 5A ON THE ONE HAND, AND ON THE OTHER HAND, ALL POINTS AND PLACES IN ZONES 3, 4, 5, 6 and 7.
 II. MINING AND CONSTRUCTION EQUIPMENT, MATERIALS AND SUPPLIES.
 BETWEEN ALL POINTS AND PLACES IN ZONE 4.
 BETWEEN ALL POINTS AND PLACES IN ZONE 4 ON THE ONE HAND, AND ON THE OTHER HAND, ALL POINTS AND PLACES IN ZONE 5 (EXCEPT ZONE 5A).
 III. CLASS A AND B EXPLOSIVES AND HOUSEHOLD GOODS AS DEFINED BY THE INTERSTATE COMMERCE COMMISSION.
 BETWEEN ALL POINTS AND PLACES IN VALDEZ, ALASKA.
 BETWEEN ALL POINTS AND PLACES IN VALDEZ, ALASKA ON THE ONE HAND, AND ON THE OTHER HAND, ALL POINTS AND PLACES LOCATED:
 1. ON HIGHWAY 2 BETWEEN AND INCLUDING FAIRBANKS, ALASKA AND THE UNITED STATES–CANADA BOUNDARY LINE.
 2. ON HIGHWAY 1 BETWEEN AND INCLUDING TOK JUNCTION AND ANCHORAGE, ALASKA.
 3. ON HIGHWAY 4 BETWEEN VALDEZ AND THE JUNCTION OF HIGHWAYS 2 AND 4 AT DELTA JUNCTION, ALASKA.
 4. ON HIGHWAY 5 BETWEEN AND INCLUDING TETLIN JUNCTION AND EAGLE, ALASKA."

2. Weaver Bros. claimed that the following portions of Ness's authority were dormant: that part which authorizes transportation of construction equipment, materials and supplies between points in Zone 4 and between points in Zone 4 and points in Zone 5, and that which authorizes transportation of general commodities between points in Zone 3 on the one hand and points in Zone 5A on the other; and between points in Zone 5A and Zones 6 and 7; and those portions of Ness's general commodity authority to transport A and B explosives and household goods.

3. AS 42.10.220(b) provides as follows:
 "(b) Only those rights which are shown to have been in active and regular use may be transferred. The transferor shall certify to the commission that the authority contained in the permit has been in reasonably continuous and active use as to the territory or routes authorized to be served and as to the various services authorized to be rendered by the carrier. The commission may require documentary evidence in support of the transfer of the permit. Dormant operating rights of the transferor may not be transferred unless the commission finds that the service is needed for the public convenience and necessity, and that the transferee will provide such service."

4. 3 AAC 64.230(d) provides as follows:
 "(d) In transferring such permit rights only those shown as having been in active and regular use will be transferred. Dormant operating rights will not be transferred unless public need for service can be shown. Prior to consideration of an application for transfer, if the commission believes that the permit or any right therein, is dormant, the commission shall refuse to transfer any dormant rights unless and until the transferor shall show such right to have been in reasonable active use for a reasonable period prior to the application. The failure for a period of six months prior to the application to conduct any substantial operations, to file a tariff or schedule, or to pay any required regulatory fees, shall create a presumption that the permit or any right therein, is dormant."

approved the transfer. The Commission's decision was affirmed by the superior court, which ordered Weaver Bros. to pay attorney's fees to Ness and K & W Trucking, of $1,000 and $1,500 respectively. Weaver Bros. appeals the affirmance of the Commission's order and the award of attorney's fees.

## I

We must first determine the scope of our review. Appellant argues that this case calls for statutory construction of the language of AS 42.10.220(b), and that such a task is within our special competency. Appellant, therefore, urges us to interpret the statute independently of the Commission's decision.

Appellees argue that the Commission's decision involved the formulation of fundamental policies, requiring the particularized expertise and experience of the Commission's personnel. Appellees, therefore, contend that we should merely inquire whether the Commission's decision had a reasonable basis. We agree with appellees' contention.

 It is indeed within our special competency, as appellants urge, to interpret a statute independently of an administrative agency determination, when the issue to be resolved is one of general statutory interpretation.[5] Where, however, as here, the agency decision concerns "administrative expertise as to either complex subject matter or fundamental policy formulations, deference should be given to an administrative determination if it has a reasonable basis in law and in fact."[6]

 We have stated that such deference should be granted because the agency, having specialized knowledge in a field, is in a better position than a court to make such determinations.[7] We believe that the Commission's decision about the dormancy of some of Ness's operating rights involved formulations of fundamental policy, requiring the expertise of the Commission's personnel. AS 42.10.220(b) mandates that permits to be transferred be in "active and regular use." The agency is better equipped than are we to determine how active and regular use shall be measured, since fundamental policy questions are presented concerning the adequacy of service to various routes and the regulation of competition in those routes.

Therefore, we shall limit our review to whether the Commission's determination had a reasonable basis in law and in fact.

## II

We proceed to apply the reasonable basis test to the Commission's finding of non-dormancy. The agency concluded that:

"If it is shown that a carrier has conducted substantial and continuous operations under its permit, as a whole, the authority is not to be decimated merely because of a lack of active, physical operations in some territorial segments, unless it appears that the carrier abandoned or refused to provide needed service to such segments . . . ."

In determining what sort of operations were substantial and continuous, the Commission looked to various factors, such as the continuity with which required filings, including tariffs and insurance, were made, the willingness of the carrier to serve, and the ability of the carrier to serve when called upon.

The Commission's determination that the requisite statutory use is "substantial" use corresponds to the Interstate Commerce

5. *Union Oil Co. of Cal. v. Dept. of Revenue*, 560 P.2d 21 (Alaska 1977); *State v. Aleut Corp.*, 541 P.2d 730 (Alaska 1975); *Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.*, 516 P.2d 408 (Alaska 1973).

6. *Alaska Pub. Util. Comm'n v. Chugach Elec. Ass'n, Inc.*, 580 P.2d 687, 694 (Alaska 1978) (footnote omitted); *see generally Jager v. State*, 537 P.2d 1100, 1107 (Alaska 1975); *Mo-*

bil Oil Corp. v. Local Boundary Comm'n*, 518 P.2d 92, 97–98 (Alaska 1974); *Swindel v. Kelly*, 499 P.2d 291, 298–99 (Alaska 1972); *Kelly v. Zamarello*, 486 P.2d 906, 916–17 (Alaska 1971); *Pan Am. Petroleum Corp. v. Shell Oil Co.*, 455 P.2d 12, 20–22 (Alaska 1969).

7. *Alaska Pub. Util. Comm'n, supra*, n.6; *Kelly v. Zamarello, supra*, n.6.

Commission's application of the federal non-dormancy requirement, found at 42 C.F.R. § 1132.5(b).[8] Interstate Commerce Commission cases applying this regulation establish that the test for non-dormancy is whether there has been "substantial" service to a representative number of points within the authorized zone of operations.[9] This test does not require that each geographic area within a carrier's authority be served.[10] In determining substantiality of operations, the Interstate Commerce Commission also looks to whether the carrier holds itself out as willing to perform,[11]

whether operations have ceased due to circumstances beyond the carrier's control,[12] and whether the carrier intends to abandon the route.[13]

The Supreme Court of Washington, in interpreting a regulation [14] which more closely resembles AS 42.10.220(b) than its federal counterpart, has reasoned along the same lines as the federal cases. In *Herrett Trucking Co. v. Washington Public Service Commission*, 61 Wash.2d 234, 241, 377 P.2d 871, 875 (1963), the court held that the "mere failure to operate in one portion of

**8.** 42 C.F.R. § 1132.5 General bases for disapproval.

(b) *Cessation of operations.* The mere cessation of operations by the holder of an operating right shall not be deemed to require denial of the proposed transfer of such right. If, however, a cessation of operations has occurred, which fact shall be stated in the application, and operations have not been conducted under the considered rights for a substantial period of time, the proposed transfer will be denied unless the holder shows that such discontinuance was caused by circumstances over which he had no control. The Commission may require, in an appropriate case, proof of the nature and the extent of operations conducted under the operating right for a period of 6 months preceding the date of the request for such evidence.

**9.** Jones Transfer Co.—Purchase—W & W Express, Inc., 116 M.C.C. 435, 441 (1973). *See also* Virginia-Carolina Freight Lines, Inc.—Purchase—Merit Transport Corp. (Joseph Keane, Statutory Receiver), 116 M.C.C. 150, 153 (1972). The *Jones* case holds that the substantiality test applies to irregular route general commodity carriers. This category would appear to include Ness, as shown by the definitions of regular and irregular route carriers. *Northern Pac. Transport Co. v. Washington Util. & Transportation Comm'n*, 68 Wash.2d 472, 418 P.2d 735, 738 (1966) stated:

"In its 'Rules and Regulations Governing Motor Freight Carriers Operating Under Permit,' (Appendix A), the Commission defines a regular route scheduled service carrier as any person who or which undertakes to transport property or any class or classes of property by motor vehicle for compensation between fixed termini or over a regular route or routes *upon established or fixed schedules.* [Italics ours.] An irregular route, non-radial service carrier is defined as any person who or which undertakes to transport property or any class of classes of property by motor vehicle for compensation over irregular routes between points or com-

munities located within such general territory as shall have been defined geographically and authorized in a permit, and any other points or communities located within the same general territory without respect to a hub community or a fixed base point of operation."

However, at least one case holds that the "substantiality" test is applicable to regular-route as well as to irregular-route carriers. *See* Central Transport, Inc.—Purchase—Piedmont Petroleum, 127 M.C.C. 1, 9–10 (1977).

**10.** Home Transportation Co., Inc.—Purchase—Chattanooga Transfer & Storage Co., 97 M.C.C. 173, 185 (1965). *Accord,* Overnite Transportation Co.—Purchase (Portion)—Alabama Highway Express, Inc., 116 M.C.C. 527, 536 (1973).

**11.** *See* Eagle Motor Lines, Inc.—Purchase—Southwest Oilfield Transportation Co., 116 M.C.C. 559, 563 (1972).

**12.** *See* A.C.E. Freight, Inc.—Investigation & Revocation of Certificates, 115 M.C.C. 96, 101 (1972); Estacada-Mollala Stages, Inc.—Revocation of Certificate, 118 M.C.C. 115, 122 (1973).

**13.** Duff Truck Line, Inc.—Purchase—Vernon R. Doering, DBA Michigan Ohio Motor Freight, 116 M.C.C. 745, 749 (1974).

**14.** Washington's Public Service Commission Rule 21(g) provides as follows:

" 'Only such permit rights as can be shown to have been in reasonably active and regular use will be transferred. Generally, a period of only one year immediately prior to the date of the application will be considered, but regard will be had for changing circumstances. Dormant rights will not be transferred unless public need for the service can be shown.' "

*Quoted* in *Herrett Trucking Co. v. Washington Pub. Serv. Comm'n.*, 61 Wash.2d 234, 236, 377 P.2d 871, 873 (1963).

the state does not affect an intrastate permit, unless there is an intent to abandon state-wide service." The carrier in *Herrett* had been active in eastern Washington, but not in the western part of the state. The court found that the carrier's intrastate permit was not dormant, taking into consideration "the testimony that [the carrier] had never refused to make trips into western Washington and that it held itself ready to serve that part of the state, if requested to do so. There was no evidence of any intent to abandon its intrastate rights." *Herrett, supra* 61 Wash.2d at 242, at 876. In *Black Ball Freight Service v. Washington Utilities & Transportation Commission*, 77 Wash.2d 479, 463 P.2d 169, 171 (1969), the Washington Supreme Court held that "readiness, willingness and ability to serve" were more important factors to be considered in deciding whether operating rights were dormant than "mere numerical calculation of the number of shipments." The court also took into account that the carrier maintained equipment consistent with the size and scope of its operation, and that it was, therefore, in a position to provide service when requested to do so. Further, the court found that there was no evidence that the carrier intended to abandon any of its rights. On that record, the rights were held to be not dormant.

▪ The Commission's reliance upon factors similar to those used by the Washington Supreme Court and the Interstate Commerce Commission convinces us that the Commission's determination of non-dormancy had a reasonable basis in law.

We also hold that, under the factors which the Commission considered, its decision was supported by substantial evidence. The Commission found that Ness's operations were, for the most part, substantial and continuous. As for the segments claimed by protestant to be dormant, Ness held himself out as ready and willing to serve, but no traffic was offered to him.

The Commission also noted that much of the traffic from construction of the trans-Alaska pipeline, available to protestant, was not offered to Ness, because of Alyeska Pipeline Service Company's policy of using only those carriers who held both I.C.C. and A.T.C. authority to serve the particular points involved in any given shipment.[15] The Commission noted that Ness had filed all tariffs, had adequate insurance, and had paid all required fees. The Commission further considered the size and scale of Ness's operations in making its determination.

As we find that the Commission's determination has a reasonable basis in law and is supported by substantial evidence, we affirm the Commission's decision and the superior court's determinations, that Ness's operating rights were not dormant and were transferable.

### III

▪ As to attorney's fees, it appears to us that the competitive advantage sought by appellant in this litigation takes the case outside of the notion of public interest litigation. *See Lynden Transport, Inc. v. State*, 532 P.2d 700 (Alaska 1975); *Mobil Oil Corporation v. Local Boundary Commission*, 518 P.2d 92 (Alaska 1974). It was not an abuse of discretion for the superior court to award fees to appellees. Our opinion in *Gilbert v. State*, 526 P.2d 1131 (Alaska 1974), on which appellant bases its argument, is not apposite.

AFFIRMED.

MATTHEWS, J., not participating.

---

**15.** Ness does not hold I.C.C. authority in all areas of the state.