[No. 7937–9–I.   Division One.   January 5, 1981.]

WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, *Appellant,* v. UNITED CARTAGE, INC., *Respondent.*

*Slade Gorton, Attorney General,* and *John W. Hough, Assistant,* for appellant.

*George Kargianis,* for respondent.

RINGOLD, J.—The Washington Utilities and Transportation Commission (Commission) appeals a judgment of the Superior Court that reversed the Commission's denial of

United Cartage's (United) request for a permit to serve a region known as the Seattle Commercial Zone. We hold that the Commission properly denied the permit and therefore reverse the trial court and reinstate the Commission's decision.

The Commission is a state administrative agency that regulates a wide range of commercial enterprises including utility companies, pipeline companies, freight transportation companies and storage warehouse companies. RCW Titles 80 and 81. Here we are concerned with the Commission's authority to issue permits to motor freight carriers. RCW 81.80.070, .400. Unless exempted from regulation, a carrier may not carry freight by motor vehicle for compensation without first obtaining a permit from the Commission, and a permit holder may not provide a service that exceeds the scope of its permit. RCW 81.80.040–.070 and .100.

The Commission's general permit issuance authority is set out in RCW 81.80.070.[1] Pursuant to this statute, the Commission decides whether an applicant is qualified, whether proposed services are consistent with the public

---

[1] "No 'common carrier,' 'contract carrier,' or 'temporary carrier' shall operate for the transportation of property for compensation in this state without first obtaining from the commission a permit so to do. Permits heretofore issued or hereafter issued to any carrier, shall be exercised by said carrier to the fullest extent so as to render reasonable service to the public. Applications for common or contract carrier permits or extensions thereof shall be on file for a period of at least thirty days prior to the granting thereof unless the commission finds that special conditions require the earlier granting thereof.

"A permit or extension thereof shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the services proposed and conform to the provisions of this chapter and the requirements, rules and regulations of the commission thereunder, and that such operations will be consistent with the public interest, and, in the case of common carriers, that the same are or will be required by the present or future public convenience and necessity, otherwise such application shall be denied.

"Nothing contained in this chapter shall be construed to confer upon any person or persons the exclusive right or privilege of transporting property for compensation over the public highways of the state."

interest and, for common carriers, whether proposed services are or will be required by public convenience and necessity. In this case we are primarily concerned with a special authority to issue permits as described in RCW 81.80.400.[2] This statute allows the Commission to designate a commercially interdependent area as a commercial zone. Once the Commission establishes a commercial zone, the statute requires it to grant certain "grandfather rights" to common carriers already providing intercity service within the zone. It must issue a zonewide permit to any common carrier that has served as an intercity carrier between any two cities in the zone during the previous year.

On February 7, 1977, the Commission established the Seattle Commercial Zone and included within its boundaries an area extending from Auburn to the Everett Boeing facilities and from Puget Sound to just past Redmond and Bellevue. WAC 480–12–096. Complying with RCW 81.80-.400, the Commission enacted a regulation recognizing the right of a common carrier to serve the entire zone if it had made intercity deliveries within the zone during the previous year. WAC 480–12–031.

United is a common carrier holding local cartage permits for Seattle and Bellevue. It initiated this matter by petitioning the Commission for an automatic extension of its permits to include the entire Seattle Commercial Zone. At

---

[2] "When upon public hearing the commission has designated an area to constitute a commercial zone upon a finding that public convenience and necessity require such designation, any common carrier of general freight who in the usual and ordinary course of his business during the past twelve months immediately preceding such designation has served as an inter–city carrier of general freight between any two cities in such zone shall have the authority to serve as a common carrier of general freight between any points within the zone at rates prescribed by the commission: *Provided, however,* That any restrictions on his authority to transport general freight shall remain in full force and effect. Any person thereafter seeking to serve as a common carrier of general freight within the zone shall be subject to all the requirements of this chapter and the rules of the commission applicable to persons seeking new or extended permit authority. Commercial zone as used herein is declared to mean an area including one or more cities or towns and environs thereto, found by the commission to be commercially interdependent."

the hearing on its petition, United proved that it had made deliveries between Seattle and Bellevue during the previous year. The Commission denied the petition on the basis of its ruling that the intercity deliveries were not authorized by United's local cartage permits.

The Commission's ruling was based on its own definition of "local cartage". Local cartage permits generally do not authorize intercity service, but the definition allows intercity service to some contiguous cities. WAC 480–12–080, –990. The Commission had consistently ruled in prior cases that Seattle and Bellevue were not contiguous, and the Commission relied on those decisions in its ruling that United's local cartage permits for each city did not authorize deliveries between them. The Commission, therefore, concluded that United failed to satisfy the factual prerequisite of intercity service and was not entitled to an automatic Seattle Commercial Zone permit.[3]

United sought review of this decision in Superior Court. The trial court reversed the Commission, holding that Seattle and Bellevue are contiguous because they have a common boundary somewhere in the middle of Lake Washington. On appeal, the Commission contends that these two cities are not contiguous. The Commission also argues that we should defer to its regulatory expertise and uphold its consistent treatment of Seattle and Bellevue as noncontiguous cities.

## STANDARD OF REVIEW

The administrative procedures act controls judicial review of a state agency's final decision in a contested case. RCW 34.04.130, .140. It requires this court and the trial court to exercise the same appellate function by reviewing the record of the administrative proceedings. RCW 34.04-.130(5); *Farm Supply Distribs., Inc. v. State Utils. &*

---

[3]The Commission has never contended that another type of permit was required to satisfy the factual prerequisite for a Seattle Commercial Zone permit. It has impliedly conceded that it is sufficient if the intercity service was lawfully provided under a local cartage permit.

*Transp. Comm'n,* 83 Wn.2d 446, 518 P.2d 1237 (1974). The standards for this review are set out in RCW 34.04.130(6).

United asks us to review the Commission's decision to determine if it was affected by an error of law. RCW 34.04-.130(6)(d). Although the Commission urges us to apply the "clearly erroneous" test in RCW 34.04.130(6)(e), the Commission also makes a persuasive legal argument that enables us to dispose of this case without examining factual issues. We have concluded that United has not met its burden of demonstrating that the Commission's decision was unlawful. *Cole v. State Utils. & Transp. Comm'n,* 79 Wn.2d 302, 485 P.2d 71 (1971); *Black Ball Freight Serv. v. State Utils. & Transp. Comm'n,* 77 Wn.2d 479, 463 P.2d 169 (1969).

COMMISSION'S INTERPRETATION OF ITS RULE
DEFINING "LOCAL CARTAGE"

■ The Commission's decision was based upon its interpretation of its own rule defining local cartage, WAC 480–12–080, –990. The Commission has consistently held that Seattle and Bellevue are not contiguous within the meaning of this rule. These decisions have affected the scope of common carrier services allowed by local cartage permits and have reflected the Commission's view of the public interest. RCW 81.80.070. We are firmly committed to the view that the judiciary should generally defer to the Commission's judgment when it interprets its own rule because the Commission, not the courts, is best qualified to promote public policy when acting within the ambit of its administrative function. *Farm Supply Distribs., Inc. v. State Utils. & Transp. Comm'n, supra; Northern Pac. Ry. v. State Utils. & Transp. Comm'n,* 68 Wn.2d 915, 416 P.2d 337 (1966); *Herrett Trucking Co. v. State Public Serv. Comm'n,* 61 Wn.2d 234, 377 P.2d 871 (1963). United, nonetheless, argues that the physical proximity of Seattle and Bellevue requires the Commission to treat the cities as contiguous.

Like many words in statutes and regulations, the precise meaning of "contiguous" depends upon the context of its usage and the intent of the statute or regulation. *See Hart v. Peoples Nat'l Bank,* 91 Wn.2d 197, 588 P.2d 204 (1978). Depending upon the circumstances, courts have ascribed a variety of meanings to "contiguous". *Safford v. Thatcher,* 17 Ariz. App. 25, 495 P.2d 150 (1972); *La Salle Nat'l Bank v. Burr Ridge,* 81 Ill. App. 2d 209, 225 N.E.2d 33 (1967); *Schwartz v. Shelby Constr. Co.,* 338 S.W.2d 781 (Mo. 1960). In some instances, the word may embody the concept of "near". *Grand Union Co. v. Laurel Plaza, Inc.,* 256 F. Supp. 78 (D. Md.), *aff'd,* 369 F.2d 697 (4th Cir. 1966). It is not our function, however, to impose that meaning on the Commission. This case is a perfect example of why we must defer to the Commission's judgment. If we required the Commission to treat nearby cities as contiguous, the impact of that decision would extend far beyond a carrier's rights to serve a commercial zone. It would inject enormous complexities into the regulation of local cartage permits issued for the public convenience and necessity pursuant to RCW 81.80.070. The extent of the expanded scope of local cartage permits to "nearby" cities would be unclear, and the resulting expanded service would undermine the Commission's prior measurement of public convenience and necessity. We accept the Commission's consistent view that it is in the public interest to treat Seattle and Bellevue as noncontiguous cities.

### EFFECT OF RCW 35.21.160

██ United next contends that Seattle and Bellevue are contiguous because their boundaries are extended halfway into Lake Washington by RCW 35.21.160. This statute regulates the powers and jurisdiction of incorporated cities and towns by extending their boundaries halfway out into certain adjoining waters. The boundaries, however, are extended for "municipal purposes" to permit the exercise of municipal powers. *Pacific Am. Fisheries v. Whatcom County,* 69 Wash. 291, 295, 124 P. 905 (1912). They are not

extended for the purpose of regulating the powers of the Commission. Those powers are controlled by RCW Titles 80 and 81. Where two statutes concern wholly different subject matters, serve entirely separate purposes and operate independently of each other, they should not be construed together. *PUD 1 v. Newport,* 38 Wn.2d 221, 228 P.2d 766 (1951); *Swanson v. Pacific Shipping Co.,* 60 Wash. 87, 110 P. 795 (1910); *cf. Champion v. Shoreline School Dist. 412,* 81 Wn.2d 672, 504 P.2d 304 (1972) (statutes relating to the same subject matter are in pari materia and should be construed together). RCW 35.21.160, therefore, has no effect on the Commission's powers, and it does not require the Commission to treat Seattle and Bellevue as contiguous cities.

Even if RCW 35.21.160 were applicable, our opinion would be unchanged because of the rule of deference to the Commission's expertise in interpreting its own rules. The Commission's comprehensive authority to regulate common carriers in the public interest includes the authority to interpret its rule to allow or deny intercity service under local cartage permits for cities that are contiguous only because of RCW 35.21.160.

■ Finally, even if we reach the factual issue of the contiguity of Bellevue and Seattle under RCW 35.21.160, the Commission's decision was not clearly erroneous. A careful reading of the statute reveals that it does not anticipate the problem that arises when several cities are located along both sides of a body of water with an irregularly shaped shoreline. In such instances, a literal application would create overlapping jurisdictions. Statutes should not be read literally to reach an absurd result. *Silver Shores Mobile Home Park, Inc. v. Everett,* 87 Wn.2d 618, 555 P.2d 993 (1976). They should be read in a manner which produces a sensible result that is consistent with the intent of the legislature. *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972).

■ The most sensible construction of RCW 35.21.160 is that a city has jurisdiction over those adjoining waters

closer to that city than to any other city. In effect, the problem boils down to one of cartography. An examination of the maps in the record reveals that Bellevue and Seattle do not have a common boundary under this interpretation of the statute. Clyde Hill, Medina, and Mercer Island are located along Lake Washington in a manner that prevents Bellevue and Seattle from having a common boundary. There is an irregularly shaped, continuous stretch of water in that portion of Lake Washington closest to the east side that belongs to either Mercer Island, Clyde Hill or Medina. The extension of the boundaries of these three cities into Lake Washington prevents the boundaries of Bellevue from reaching Seattle's boundaries in the middle of the lake.

The Commission's decision was not affected by an error of law and was proper in all respects. United does not qualify for an automatic Seattle Commercial Zone permit, but our decision does not affect United's right to petition for that permit under other provisions in RCW 81.80. *See* RCW 81.80.070, .400.

The trial court is therefore reversed.

JAMES, C.J., and CALLOW, J., concur.

Reconsideration denied February 10, 1981.

Review denied by Supreme Court April 23, 1981.